UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>LAURENCE F. DOUD III,<br><br>                              Defendant. | Case No. 19 Cr. 285 (GBD) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LAURENCE F. DOUD'S MOTION TO DISMISS THE INDICTMENT

ROBERT C. GOTTLIEB
& ASSOCIATES PLLC
111 Broadway, Suite 701
New York, NY 10006
Tel.: (212) 566-7766
Fax: (212) 374-1506

*Attorneys for Defendant
Laurence F. Doud III*

**PRELIMINARY STATEMENT AND INTRODUCTION**

Defendant Laurence Doud III respectfully moves this Court to dismiss the Indictment in this case, being keenly aware that a first motion to dismiss was filed on October 1, 2019. Mr. Doud presumes that the Court is familiar with the factual background and procedural history of this matter through the parties' previous filings and the oral argument held by this Court on the defendant's first motion to dismiss on January 29, 2020. The first motion to dismiss was predicated on the grounds that Mr. Doud is not subject to the prosecutorial theory embraced by *United States v. Moore*, 423 U.S. 122 (1975) and its progeny as its holding does not extend to the chief executive officer ("CEO") of a Drug Enforcement Administration ("DEA") registered company that distributed controlled substances to DEA registered pharmacies. This second motion to dismiss rests on a significantly different legal theory that prohibits the Government from charging Mr. Doud under a general crime theory of prosecution for actions that have already been determined to constitute federal regulatory violations which were not criminal acts during the time period of the Indictment.

The United States Supreme Court, in *United States v. Dowling*, 473 U.S. 207 (1985) set forth the rule that if certain conduct is specifically prohibited under federal law, the Government cannot eschew that particular violation and pursue a harsher penalty through a more generalized prosecutorial theory. 473 U.S. at 213. *Dowling* stands for the proposition that the Government must apply a "narrow interpretation" of a defendant's behavior in order to show the appropriate amount of "respect" for Congress' role in defining federal crimes. *Id.* To do otherwise would be in clear contradiction of the will of Congress. *Id.*

The essence of the Government's allegations against Mr. Doud, the CEO of Rochester Drug Cooperative, Inc. ("RDC") is that he i) failed to maintain effective controls against the

1

diversion of controlled substances; and ii) failed to file suspicious order reports with the DEA despite "red flags" of wrongdoing by pharmacies that purchased RDC's controlled substances.

*See* Indictment, at ¶¶ 9, 16, 24 & 38. The Government chose to charge Mr. Doud with participation in a Narcotics Conspiracy (Count I) and a Conspiracy to Defraud the United States (Count II). *See, generally, id.* However, the specific conduct attributed to Mr. Doud under both counts of the Indictment was prohibited and classified as civil regulatory violations, not federal crimes, at the time of Mr. Doud's alleged wrongdoing under 21 C.F.R. §§ 1301.71(a) & 1301.74(b). The alleged criminal conduct in the instant Indictment was not included in the Controlled Substances Act ("CSA") until October 2018, a year after the time period of the Indictment.[1] Consequently, applying the "narrow interpretation" required under *Dowling* to Mr. Doud's alleged conduct prior to October 2018 would require his prosecution for regulatory violations carrying an array of fines rather than a criminal conspiracy carrying a mandatory 10 year term of imprisonment.

This is a case of first impression in the Second Circuit. We have located no precedent for district courts upholding the power of the Government to prosecute an individual accused of conduct addressed as regulatory violations with substantive conspiracy charges.

## ARGUMENT

### THE INDICTMENT MUST BE DISMISSED BECAUSE THE GOVERNMENT CANNOT SEEK A HARSHER CRIMINAL PENALTY THROUGH A GENERAL CRIME WHEN MORE SPECIFIC, APPLICABLE VIOLATIONS ALREADY EXIST

Mr. Doud respectfully requests that this Court dismiss Counts 1 and 2 of the instant Indictment as the Government improperly seeks to hold Mr. Doud criminally liable for actions which were determined to constitute federal regulatory violations and which were not criminalized under the CSA during the time period of the Indictment.

---

[1] The Indictment charges that the conspiracies took place between 2012 and 2017.

### A. Applicable Law

#### i)   The Relevant Sections of the Code of Federal Regulations

The Indictment covers conduct alleged to have occurred between approximately 2012-2017. During that time, <u>only</u> the Code of Federal Regulations ("CFR") contained explicit prohibitions against failing to maintain effective diversion controls and failing to file suspicious order reports, the two acts the Government alleges serve as the basis for Mr. Doud's criminal liability.

The plain text of 21 C.F.R. § 1301.71(a) reads: "*All applicants and registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances.*"[2] Alternatively, 21 C.F.R. § 1301.74(b) states: "*The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the [DEA] of suspicious orders when discovered by the registrant… .*"

Violations of the CFR may result in fines or the loss of DEA registration and licensure, resulting in the individual or company being unable to take part in the lawful distribution of scheduled controlled substances. Even if Mr. Doud had committed the acts alleged by the Government, his conduct was prohibited by provisions of the CFR and were civil, rather than criminal in nature.

#### ii)   The Failure to Criminalize in the Controlled Substances Act

Prior to the 2018 amendments to the CSA, neither the failure to maintain effective diversion controls nor the failure to file suspicious order reports were the basis for any criminal liability

---

[2] Notably, virtually all the discussion contained in 21 C.F.R. §§ 1301.71-1301.76 which concerns maintaining effective controls against theft and diversion refers to the physical safety of the substances from theft (i.e. storage in vaults, appropriate locks on doors, employment of a suitable number of guards, etc.). It does <u>not</u> discuss corporate policy about how and when to sell controlled substances to DEA registered buyers to prevent diversion of controlled substances outside of legitimate channels.

3

under the Act.[3] Certainly, this conduct was not among the acts prohibited under 21 U.S.C. §§ 841 or 846, the charges filed against Mr. Doud. Nor were these specific acts discussed by 21 U.S.C. § 842(a), the provision which enumerates certain prohibited acts which can trigger misdemeanor CSA liability.

The Congressional commentary concerning the statutory text of the CSA for the time period of the Indictment indicates that the Act did not require distributors to identify and disclose suspicious orders. *See Legal Authorities Under the Controlled Substances Act to Combat the Opioid Crisis*, Congressional Research Service, December 18, 2018, Attached as Exhibit A, at p. 39. This disclosure requirement was only a DEA regulation mandated in the CFR. *Id.* In fact, the CSA did not even contain a definition of "suspicious order" until the October 2018 amendment was passed. *Id.*

Additionally, the mandate to maintain effective diversion controls appears in the CSA only as a consideration for whether the Attorney General should grant DEA licensure to an applicant. *See* 21 U.S.C. § 823(b)(1). The Congressional commentary on the CSA states:

> The CSA provides civil and criminal penalties for any unlawful manufacture, distribution, importation, exportation, or possession of controlled substances. *Such violations may include (1) "regulatory" offenses committed by registrants who do not adhere to their responsibilities under the CSA, thereby increasing the risk of diversion*, and (2) illicit trafficking or possession crimes that occur outside the "closed system" of authorized controlled substance distribution that primarily involve non-registrants. (emphasis supplied).

---

[3] The 2018 amendment specifically added a new provision which allowed for *criminal fines, but not incarceration*, to be utilized for knowing violations of these regulatory violations. *See* 21 U.S.C. § 842(c)(2). Similarly, the same amendment added section 21 U.S.C. § 827(f)(3)(B) discusses initiating proceedings under the Act against distributors for failing to maintain effective controls against diversion. It was also not a part of the Act during the time period of 2012-2017.

4

*Id.*, at p. 6. The commentary also specifically notes that it "is primarily focused on the CSA's noncriminal regulatory provisions pertaining to activities permitted by the CSA," such violations discussed in the report include failing to maintain effective diversion controls and failing to file suspicious activity reports. *Id.*

The current text of the CSA, post-2018 amendment, is also instructive on the pertinent issue of Congressional intent towards the failure to maintain effective controls against diversion and the failure to file suspicious activity reports. Rather than resort to guesswork in contemplating exactly how Congress viewed these particular behaviors, the amended statute provides concrete updates to the CSA which, although inapplicable to Mr. Doud because they were passed after the purported criminal activity ended, are valuable in illuminating Congressional intent for the purposes of a *Dowling* analysis. The law was amended in October 2018 in ways that are especially relevant to the consideration of this motion to dismiss. 21 U.S.C. § 842(c)(1)(B) was added to reads as follows:

> **(ii)** In the case of a violation described in clause (i) committed by a registered manufacturer or distributor of opioids and related to the reporting of suspicious orders for opioids, failing to maintain effective controls against diversion of opioids, or failing to review the most recent information made available by the Attorney General in accordance with section 827(f) of this title, the penalty shall not exceed $100,000.

Congress also added a section describing increased penalties for a knowing violation of the law in 21 U.S.C. § 842(c)(2):

> **(A)** If a violation of this section is prosecuted by an information or indictment which alleges that the violation was committed knowingly and the trier of fact specifically finds that the violation was so committed, such person shall, *except as otherwise provided in subparagraph (B) or (D)* of this paragraph, be sentenced to imprisonment of not more than one year or a fine under Title 18, or both. (emphasis supplied).

5

> **(D)** In the case of a violation described in subparagraph (A) that was a violation of paragraph (5), (10), or (17) of subsection (a) committed by a registered manufacturer or distributor of opioids that relates to the reporting of suspicious orders for opioids, failing to maintain effective controls against diversion of opioids, or failing to review the most recent information made available by the Attorney General in accordance with section 827(f) of this title, the criminal fine under Title 18 shall not exceed $500,000.

Congress' additions to the CSA expressly determined that even "knowing" violations of these rules would *not* subject an individual to potential incarceration but rather enhanced monetary fines up $500,000.

### iii) The Applicable Holding in *United States v. Dowling*, 473 U.S. 207 (1985)

Each time the United States Supreme Court has been presented with the issue of whether a defendant can be charged under a prosecutorial theory with stricter penalties rather than a more narrowly applicable alternative, it has decided that "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Dowling*, 473 U.S. at 214, *quoting United States v. Bass*, 404 U.S. 336, 347 (1971) (internal quotation marks omitted); *see also United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952). This principle is derived from the concept that the power to define conduct deserving of criminal punishment must be vested in the legislature, rather than the judiciary; it is not the province of the judicial branch to define what a crime is. *United States v. Wiltberger*, 5 Wheat. 75, 95 (1820).

In *Dowling*, the defendant created a system to make bootleg copies of unreleased Elvis Presley recordings, without permission, and transport them across state lines. *Dowling*, 473 U.S. at 209-212. He was convicted of conspiracy to transport stolen property in interstate commerce, interstate transportation of stolen property, copyright infringement and mail fraud. *Id.*, at 209. On appeal, Dowling argued that the only appropriate conviction charge was copyright infringement,

6

because that was the only violation which directly fit the activities which he was alleged to have taken part in. *Id.*

The Supreme Court agreed and vacated the convictions of all the charges except the copyright infringement, reasoning that Congress had "unquestioned authority to penalize directly the distribution of goods that infringe copyright... ." *Id.*, at 220. The Court further explained that, because of that authority, it was "implausible to suppose that Congress intended to combat the problem of copyright infringement by the circuitous route hypothesized by the Government." *Id.*, at 221. The Government cannot criminally prosecute actions which have already been contemplated and determined **not** to warrant criminal penalties, and the courts must follow Congress' lead in determining appropriate punishments. In *Dowling*, the Supreme Court held that Congress had "chiefly relie[d] on an array of civil remedies to provide copyright holders protection against infringement ... but in exercising its power to render criminal certain forms of copyright infringement, it has acted with extreme caution." *Id.* Legally, when certain actions already have penalties associated, the Government is constrained to prosecute under those specific predefined parameters.

Dowling's prosecution for the more severe crime of interstate transportation of stolen property was deemed an overreach because Congress had simply not envisioned that the statute would be used to punish that particular type of behavior:

> The Government thereby presumes congressional adoption of an indirect but blunderbuss solution to a problem treated with precision when considered directly. To the contrary, the discrepancy between the two approaches convinces us that Congress had no intention to reach copyright infringement when it enacted § 2314 [the prohibition against transporting stolen goods].

7

*Id.*, at 226; *see also id.*, at 227 ("The rationale supporting application of the statute under the circumstances of this case would equally justify its use in wide expanses of the law which Congress has evidenced no intention to enter by way of criminal sanction.").

The holding in *Dowling* constrains the Government to prosecute actions which Congress has clearly shown an intent to criminalize, and prevents the Government from expanding the bounds of general crimes beyond the limits of what Congress intended that they should be.

**B. Analysis of Mr. Doud's Actions in This Case**

Here, Mr. Doud finds himself in an analogous situation to Dowling. In the same way that the Supreme Court refused to conclude that Congress intended copyright violations to extend to transportation of stolen property, this Court must refuse to accept the Government's argument that failure to maintain effective diversion controls or file suspicious activity reports could constitute conspiracies to traffic narcotics or defraud the United States between 2012 and 2017. Despite federal regulations enacted to specifically address Mr. Doud's alleged illegal actions (*see* 21 C.F.R. §§ 1301.71(a) & 1301.74(b)), he now finds himself charged with participation in two separate criminal conspiracies.[4] Faced with the decision to hold Mr. Doud accountable for the conduct which the Government claims are the foundation for any liability in this matter, the Government once again has opted to pursue an "indirect but blunderbuss solution" to behavior which had already been determined not to be criminal in nature, despite its contradiction to Supreme Court jurisprudence. *Dowling*, 473 U.S. at 226.

The language of 21 U.S.C. § 1301.71(a) and 21 U.S.C. § 1301.74(b) (provided, *supra*, in **Section A(i)**) give precisely the type of "clear and definite" language the United States Supreme

---

[4] Mr. Doud is <u>not</u> charged with the regulatory violations of failing to maintain effective decision controls or failing to file suspicious activity reports.

8

Court contemplated in *Dowling* when determining whether a prosecution was authorized. *Dowling*, 473 U.S. at 214. No similar or parallel language appeared in the CSA (21 U.S.C. § 801 *et seq.*) during the time period specified in the Indictment which would allow a reasonable person to conclude that Congress had intended that the failure to maintain effective diversion controls or to file suspicious order reports could constitute a criminal violation of sections 841 or 846 the CSA. Here, as in *Dowling*, the Government is attempting to expand a criminal statute well beyond what Congress envisioned in order to encompass behavior that there is no indication was ever intended to fall within the law's purview.

Accordingly, Mr. Doud can only be charged with violating the regulatory violations in the CFR as the CSA simply did not plainly and unmistakably signify that these regulatory violations could serve as the basis for a conspiracy charge.

Further, over the last 50 years the Controlled Substances Act has been modified and updated multiple times to reflect Congress' views on what activities should fall under the various provisions of the Act and the appropriate penalties. In the very first iteration of rules and regulations enacted after passage of the Controlled Substances Act, a distributor's responsibilities to maintain diversion controls and file suspicious order reports were created. *See* 36 Fed. Reg. 7776, 21 C.F.R. §§ 301.71(a), 301.74(b), April 24, 1971. Accordingly, since the inception of the CSA's passage, these actions had been concerns discussed in the context of enforcement, yet Congress did not delineate its position towards them with clearly defined language until October 2018, over a year after the purported conspiracies ended. Congress has had ample prior opportunities to criminalize the failure to maintain diversion controls or file suspicious activity reports, but has instead acted with "exceeding caution," demonstrating a lack of intent to allow

9

these types of behavior to serve as the basis for general criminal conspiracy charges. *Dowling*, 473 U.S. at 221.

In this case we are granted additional clarifying insight into how Congress viewed the matter by their recent amendments to the CSA directly addressing this issue. The October 2018 changes to the CSA signify how Congress believed these actions should be treated. As the *Dowling* decision makes abundantly clear, deference should be made to Congress when determining whether certain actions are punishable as criminal violations and, if Congress does not intend for certain activities to fall under the purview of some generalized crimes, then the Government may not charge them. *Dowling* 473 U.S. at 213. A "clear and definite" statement of what penalties should be associated with the actions that the Government is alleging that Mr. Doud participated in must be taken from the CFR, where those actions were expressly prohibited during the time period of the Indictment. It is improper for the Government to circumvent the clear will of Congress and charge Mr. Doud with generalized conspiracy crimes while ignoring the specific provisions which directly address his purported behavior. *Id.*, at 228. The language of 21 U.S.C. § 841 and 18 U.S.C. § 371 does not "plainly and unmistakably" cover Mr. Doud's conduct, and therefore he cannot be charged with violations of those statutes. *Id.*; *see also United States v. Lacher*, 134 U.S. 624, 629 (1890).

By circumventing the CFR sections which directly apply to what the Government alleges that Mr. Doud actually did, and by charging him with participation in multiple criminal conspiracies, the Government again "presumes congressional adoption of an indirect but blunderbuss solution to a problem treated with precision when considered directly." *Dowling*, 473 U.S. at 226. Prior to the October 2018 Amendments to the Controlled Substances Act, Congress had <u>never</u> showcased <u>any</u> intent to make Mr. Doud's purported failures the basis for a federal

criminal charge, falling far short of "clear and definite language" standard that *Dowling* demands. *Id.*, at 214. Regardless of how egregious the Government believes Mr. Doud's conduct is, the plain fact remains that unless Congress has specifically passed legislation codifying that certain actions are criminalized for the time period in which he committed them, he cannot be prosecuted for those actions. Even the substance of the October 2018 amendments to the CSA do not support the Government's attempt to incarcerate an individual for these actions, in fact evidencing the opposite. Consequently, the Indictment must be dismissed.

[this section intentionally left blank]

## **CONCLUSION**

For the reasons set forth herein, Mr. Doud respectfully requests that this Court dismiss the Indictment alleging Narcotics Conspiracy and Conspiracy to Defraud the United States because the United States Supreme Court holding in *Dowling* makes it clear that when the Government is confronted with the ability to apply a rule which is narrowly tailored to specific conduct or a generalized prohibition with a harsher penalty, the more precise theory contemplating the exact conduct alleged is what must be applied absent a clear showing of congressional intent to do otherwise. Additionally the Congressional legislative notes demonstrate that these particular actions were considered to be noncriminal regulatory violations during the time period of the Indictment. Consequently, the failure to maintain effective controls against diversion and the failure to file suspicious order reports should be addressed as civil regulatory violations rather than the subject of criminal conspiracy charges.

Dated: New York, NY
April 23, 2021

By: _____
Robert C. Gottlieb, Esq.
Derrelle M. Janey, Esq.
Paul R. Townsend, Esq.

ROBERT C. GOTTLIEB
& ASSOCIATES PLLC
111 Broadway, Suite 701
New York, NY 10006
Tel: (212) 566-7766
Fax: (212) 374-1506
rgottlieb@robertcgottlieblaw.com

*Attorneys for Defendant
Laurence F. Doud III*