UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :

UNITED STATES OF AMERICA
                                              :

   - v. -                                                                   19 Cr. 285 (GBD)
                                              :

LAURENCE F. DOUD III,
                                              :

   Defendant.
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S SECOND MOTION TO DISMISS THE INDICTMENT

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Nicolas Roos
Alexandra Rothman
Assistant United States Attorneys
   *Of Counsel*

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Laurence F. Doud III's second motion to dismiss the Indictment. (Dkt. Nos. 61-64.) The defendant was the chief executive officer of a major pharmaceutical distribution company that sold dangerous and highly addictive drugs, like oxycodone and fentanyl, that the defendant knew were being dispensed illicitly to individuals who had no legitimate medical need for them, and who were instead selling or abusing the drugs. The defendant and his company made millions through this scheme, and in the process helped to saturate the country with staggering quantities of illicit oxycodone and fentanyl.

The defendant argues in his motion that the Indictment should be dismissed because his conduct constitutes a regulatory violation, and therefore, purportedly relying on the Supreme Court's decision in *Dowling v. United States*, 473 U.S. 207 (1985), he cannot be prosecuted under the provision of the Controlled Substances Act making it a crime for "any person" to illegally distribute controlled substances. But the Indictment sufficiently pleads the defendant's involvement in a criminal conspiracy encompassing significantly more than mere regulatory violations, and every court that has considered the argument advanced by the defendant – including the Supreme Court – has rejected limitations on the applicability of 21 U.S.C. § 841 premised on the argument advanced by the defendant here. *Dowling*, moreover, neither sets forth a general limitation on criminal statutes, nor is it a basis for ruling that the criminal provisions of the Controlled Substances Act do not reach distributors or manufacturers. The defendant's second motion to dismiss, like his first, is without merit and should be denied.

**BACKGROUND**

The Indictment charges the defendant, the former CEO of Rochester Drug Co-Operative, Inc. ("RDC"), in two counts. First, in Count One, the defendant is charged with conspiring with other RDC employees to distribute, and to aid and abet the distribution of, controlled substances outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C). As alleged in the Indictment, as a pharmaceutical distributor, RDC was responsible for controlled substances to pharmacy customers. (Indictment ¶¶ 8-9.) RDC supplied tens of millions of doses of opioids, including oxycodone and fentanyl, to pharmacies that were dispensing those drugs to individuals with no legitimate medical need for them. (*Id.* ¶ 3.) RDC's compliance department personnel repeatedly reported to Doud that many of its largest customers were dispending controlled substances that were being diverted from legitimate channels of distribution. (*Id.* ¶ 14.) Nonetheless, Doud directed that RDC dispense controlled substances to customer's that the company's compliance department had concluded displayed "red flags" indicating that the pharmacy was dispensing controlled substances for unlawful purposes. (*Id.*) Doud also told the company's compliance department not to terminate sales to customers that were illegally selling controlled substances. (*Id.* ¶ 15.) Doud directed RDC's continued distribution of controlled substances to these pharmacies despite knowing – or consciously avoiding confirming the fact that – they were engaged in illicit distribution of oxycodone and fentanyl. (*Id.* ¶ 19.)

In Count Two, the defendant is charged with conspiring to defraud the DEA, in violation of Title 18, United States Code, Section 371, by attempting to obstruct and hinder DEA oversight of RDC's practices in order to prevent the DEA's enforcement of the narcotics laws against RDC and its customers. Doud deliberately caused RDC to make misrepresentations to the DEA about

its due diligence practices and controls against diversion, and told RDC employees not to report to the DEA thousands of suspicious orders from its customers. (*Id.* ¶ 24.) Despite making representations to the DEA that RDC had procedures for conducting due diligence on new customer accounts and reporting suspicious orders to the DEA, the defendant instructed RDC employees to ignore DEA regulations, open new customer accounts without conducting due diligence, not terminate suspicious customers, and not report suspicious orders or customers to the DEA. (*Id.* ¶¶ 24-36.)

On October 1, 2019, the defendant moved to dismiss Count One of the Indictment arguing, among other things, that his alleged criminal conduct was not encompassed by 21 U.S.C. § 841. (Dkt. Nos. 12-14.) The Court heard argument on the motion on January 29, 2020, and reserved decision. On April 23, 2021, the defendant filed a second motion to dismiss. (Dkt. Nos. 61-64.)

## ARGUMENT

The defendant argues that the Indictment should be dismissed because the Supreme Court's decision in *Dowling v. United States* purportedly "makes it clear than when the Government is confronted with the ability to apply a rule which is narrowly tailored to specific conduct or a generalized prohibition with a harsher penalty, the more precise theory . . . is what must be applied," and here that would mean applying "noncriminal regulatory violations," not "criminal conspiracy charges." (Mot. at 13.) The defendant is mistaken. The Supreme Court, and several lower courts, have rejected this argument, holding that the potential applicability of regulatory or other statutory provisions to a distributor's or other person's conduct is *not* a basis to conclude that criminal conspiracy charges do not also apply. Here, the Indictment alleges defendant's involvement in a criminal conspiracy encompassing conduct more expansive and serious than mere regulatory violations. The defendant's attempt to cabin the charged conduct to merely what

is covered by the regulations, and then argue that those regulations preclude criminal prosecution, is legal gymnastics unsupported by *Dowling* or any other precedent. The motion should be denied.

### A. Applicable Law

#### 1. Motion to Dismiss Standard

An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). "Since federal crimes are 'solely creatures of statute,' a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012) (quoting *Dowling v. United States*, 473 U.S. 207, 213 (1985)). "[W]hen assessing the reach of a federal criminal statute, [courts] must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids." *Dowling*, 473 U.S. at 213. That said, for purposes of a motion to dismiss, "[i]n assessing whether the indictment charges an offense under the statutory provision alleged, . . . '[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *United States v. Foley*, 73 F.3d 484, 488 (2d Cir. 1996) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

#### 2. The Supreme Court's Decision in *Dowling v. United States*

The defendant's motion relies almost exclusively on the Supreme Court's *Dowling* decision. In *Dowling*, the defendant was convicted of violating the National Stolen Property Act, 18 U.S.C. § 2314, which prohibited the interstate transportation of goods that have been "stolen, converted or taken by fraud." 473 U.S. at 208. The Court took the case to "determine whether the

statute reach[ed] the interstate transportation of 'bootleg' phonorecords, 'stolen, converted or taken by fraud' only in the sense that they were manufactured and distributed without the consent of the copyright owners of the musical compositions performed on the records." *Id.*

Beginning with the statutory language, the Court concluded that the text of the statute was "ill-fitting" and did not "plainly and unmistakably" prohibit the interstate transportation of records made without a copyright owners' consent. *Id.* at 218, 228. Turning to the statute's history and purpose, the Court found an absence of direct evidence that Congress intended for 18 U.S.C. § 2314 to apply to copyright infringement, and concluded because Congress has the authority to penalize infringement, it was "implausible" to suppose that Congress intended to combat infringement through the "circuitous route" of the National Stolen Property Act. *Id.* at 220-21. As an "additional reason to hesitate before extending § 2314" to copyright infringement, the Court noted the fact that "Congress chiefly [had] relied on an array of civil remedies to provide copyright holders protection against infringement," and had "acted with exceeding caution" in "exercising its power to render criminal certain forms of copyright infringement." *Id.* at 221. Because Congress had demonstrated a prior reluctance in the copyright laws to attach stiff criminal penalties to copyright infringement, the Court deemed it "implausible" that Congress sought to criminalize this conduct through the "circuitous" and "blunderbuss" route of prohibiting the transportation of stolen property. *Id.* at 225-26. Without evidence that Congress intended to extend the National Stolen Property Act to wholly intangible property interests, the Court held that a copyright, like other forms of intellectual property, lacks the physical characteristics that the statute contemplates. *Id.* at 217-18.

With a few exceptions not relevant here, *Dowling* has been construed narrowly in the Second Circuit and has largely been limited it to its facts. *See, e.g., United States v. Kwan*, No. 02

CR. 241 (DAB), 2003 WL 21180401, at *2 (S.D.N.Y. May 20, 2003) ("'the [*Dowling*] court placed special emphasis on the special nature of federal copyright law,' and the Second Circuit, in *Wallach*, ultimately found *Dowling* not to be controlling over non-copyright § 2314 cases") (quoting *United States v. Wallach*, 935 F.2d 445, 467 (2d Cir. 1991)); *United States v. Farraj*, 142 F.Supp.2d 484, 489 (S.D.N.Y. 2001) (holding that *Dowling* stands only for the proposition that "where the victim holds only a copyright, distinct from the possessory interest of the owner of a simple good, and the only act charged involves an unauthorized infringement of that copyright, there is no violation of § 2314").

### 3. The Controlled Substances Act

The Controlled Substances Act makes it a crime "for any person knowingly or intentionally to . . .distribute, . . . a controlled substance," 21 U.S.C. § 841, or to conspire to do the same, 21 U.S.C. § 846. In enacting the Controlled Substances Act in 1970, Congress "intended to 'strengthen,' rather than weaken, 'existing law enforcement authority in the field of drug abuse.'" *United States v. Moore*, 423 U.S. 122, 132 (1975) (quoting 84 Stat. 1236 (1970) (preamble)). In strengthening the nation's narcotics laws, "[t]he legislative history indicates that Congress was concerned with the nature of the drug transaction, rather than with the status of the defendant." *Id.* at 134. "Congress was particularly concerned with the diversion of drugs from legitimate channels to illegitimate channels." *Id.* at 135. For that reason, "[b]y its terms § 841 reaches 'any person,'" *id.* at 131, including "manufacturers, wholesalers, retailers, and all others in the legitimate distribution chain," *id.* at 135. "[S]evere criminal penalties" associated with § 841 were therefore intended for those "who sold drugs, not for legitimate purposes, but 'primarily for the profits to be derived therefrom.'" *Id.* at 135 (quoting H.R. Rep. No. 91-1444 at 10).

In addition to imposing criminal penalties on registrants that divert controlled substances, *id.*, the Act also authorized the Attorney General to "promulgate rules and regulations . . . relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances. . . ." 21 U.S.C. § 821. Pursuant to that authority, *after* the passage of the Act, the DEA Administrator promulgated 21 C.F.R. § 1301.71(a), which requires all registrants to "provide effective controls and procedures to guard against theft and diversion of controlled substances," and 21 C.F.R. § 1301.74(b), which imposed a legal obligation on manufacturers and distributors to "design and operate a system to disclose to the registrant suspicious orders of controlled substances." *See Regulations Implementing the Comprehensive Drug Abuse Prevention and Control Act of 1970*, 36 Fed. Reg. 7776, 7784 (Apr. 24, 1971).

### B. Discussion

The defendant argues that his conduct, as alleged in the Indictment, is merely a violation of two specific regulatory provisions – 21 C.F.R. § 1301.71(a) and § 1301.74(b) – both of which were issued following the passage of the Controlled Substances Act. Proceeding from that premise, he argues, citing *Dowling*, that since his conduct is directly covered by those regulatory provisions, he cannot be prosecuted under a "general crime theory" under 21 U.S.C. § 841 or 18 U.S.C. § 371. Not so. The Indictment adequately pleads violations of the criminal conspiracy provisions charged in Counts One and Two; the defendant's argument is necessarily premised on mischaracterizing the charged conduct so that the regulations appear to be more applicable than they truly are; and every court to consider the defendant's arguments have rejected them.

First, there is no question that the Indictment alleges in sufficient terms that the defendant violated the statutes charged in Counts One and Two. With respect to Count One, which alleges a violation of 21 U.S.C. §§ 841 and 846, the Indictment alleges – as discussed in the Government's

opposition to the defendant's first motion to dismiss – that RDC and the defendant are "persons" as defined in the Controlled Substances Act. (Gov't Opp. at 8-12.) As a "person," the defendant is alleged in the Indictment to have knowingly and intentionally conspired to distribute controlled substances in an illegal manner. For Count Two, the Indictment alleges that the defendant conspired to defraud the DEA by attempting to obstruct and hinder the DEA's oversight of RDC. As to both counts, the Indictment uses clear and direct terms the ways in which each of the elements necessary to constitute the offenses are met. That alone is enough to reject the defendant's motion to dismiss. *Foley*, 73 F.3d at 488. As *Dowling* notes, where it is clear from the text of the statute that it applies to alleged criminal conduct, it is unnecessary to look to other clues for Congress's purpose. Because the statutes set forth in the Indictment apply to the defendant's alleged conduct, it is unnecessary to wade deeper into the statutory construction exercise undertaken by the *Dowling* court.

Second, it is settled law that the existence of a specific regulatory or statutory provision is not a bar to a prosecution under 21 U.S.C. § 841, and by extension 18 U.S.C. § 371. In *United States v. Moore*, the Supreme Court considered the very objection the defendant has raised here and held that it was "immaterial whether [the defendant] also could have been prosecuted for his violation of [other] statutory provisions" because "[t]here is nothing in the statutory scheme or the legislative history that justifies a conclusion that a registrant who may be prosecuted for the relatively minor offense of violating [a regulatory section of the Act] is thereby exempted from prosecution under § 841 for the significantly greater offense of acting as a drug 'pusher.'" 423 U.S. at 138. Contrary to the defendant's suggestion otherwise, this is not a question of first impression. Every court to have considered the issue since *Moore* has concluded that the existence of statutory or regulatory provisions concerning a defendant's conduct is not a bar to prosecution

under 21 U.S.C. § 841. *See United States v. Armstrong,* 550 F.3d 382, 401 n.31 (5th Cir. 2008) ("whether a defendant's conduct precipitating a prosecution under § 841 also violates § 842 is not relevant"); *United States v. Daas*, 198 F.3d 1167, 1176-77 (9th Cir. 1999) (regulatory provisions are not evidence of congressional intent to exempt distributors from criminal penalties under 21 U.S.C. § 841); *United States v. Limberopoulos*, 26 F.3d 245, 249-51 (1st Cir. 1994) (criminal penalties under 21 U.S.C. § 841 are not mutually exclusive with other parts of the Controlled Substances Act); *United States v. Rattini*, No. 1:19 Cr. 81, 2021 WL 848713, at * 12-13 (S.D. Ohio Mar. 5, 2021) (rejecting the argument that a distributor of controlled substances should have been charged under a different provision of the Controlled Substances Act); *United States v. Hilst*, No. 07 Cr. 10079-01, 2007 WL 9717579, at *5 (D. Kan. Oct. 19, 2007) (rejecting the argument that the penalty provisions of other parts of the Controlled Substances Act require dismissal of a charge under 21 U.S.C. § 841).

The Ninth Circuit's decision in *Daas* is particularly instructive. In that case, the defendant, a distributor to convenience stores, who sold over-the-counter decongestants containing precursor chemicals which he knew were being used to manufacture methamphetamine, was charged with violating 21 U.S.C. § 841. 198 F.3d at 1171. Like the defendant here, he argued that different provisions of the narcotics laws "describe transactions exactly like those at issue . . . and subject them to . . . reporting and record-keeping requirements," and therefore it is clear that "Congress chose to address this problem by enacting reporting and record-keeping requirements," and not the criminal provisions of § 841. *Id.* at 1176. Rejecting that argument, the Ninth Circuit stated the following:

> The regulatory scheme is not inconsistent with congressional intent to subject distributors like Daas to criminal penalties in addition to reporting and record-keeping requirements. Daas has cited no authority for the proposition that serious

   penalties for distributing certain substances and lesser penalties for regulatory violations are, or should be, mutually exclusive. The regulatory provisions are not evidence of congressional intent to exempt distributors like Daas from criminal penalties under § 841(d)(2). [The provisions in question] were added to the Controlled Substances Act in 1996 as part of the CMCA. Therefore, section 841(d)(2) pre-existed [those provisions] by eighteen years. Because the newer sections were enacted after the meaning of § 841(d)(2) was established, it follows that [those provisions] do not enable Daas to create an ambiguity in § 841(d)(2). If, by enacting the CMCA in 1996, Congress had intended to exempt distributors like Daas from liability under § 841(d)(2), it would have amended § 841(d)(2) to make this intention clear. Otherwise, the court must presume that the original meaning of § 841(d)(2) is still valid.

*Id.* at 1176-77 (citations omitted). Here, for the same reason, the regulatory scheme is not inconsistent with Congress's intent to subject distributors and their employees to criminal penalties in addition to regulatory sanctions. As explained by the Supreme Court in *Moore*, there is nothing in the Controlled Substances Act's text or legislative history that exempts distributors from the provisions of § 841 where their conduct is also violative of regulatory provisions. Indeed, as was the case in *Daas*, the regulatory provisions cited by the defendant in support of his motion were implemented *after* the Controlled Substances Act was passed. The regulations cited by the defendant were promulgated pursuant to the Controlled Substance Act, not in derogation of its specific provisions; and Congress did not intend to exempt distributors from liability under § 841 through the existence of the regulatory provisions.

   Third, *Dowling* is not a basis to depart from the foregoing controlling authority. As discussed above, the holding in *Dowling* was not – as the defendant claims – that the Government cannot eschew a particular regulatory violation and pursue a harsher penalty through a more generalized prosecution theory. Nothing in *Dowling* requires that the Government elect to prosecute a defendant under a narrower and less serious provision of a law or statute, and as a general matter the opposite is true. *See*, *e.g.*, *United States v. Batchelder*, 442 U.S. 114, 123-24

(1979) ("when an act violates more than one criminal statute, the Government may prosecute[] under either so long as it doesn't discriminate against any class of defendants"); *United States v. Graham*, 632 F. App'x 4, 7 (2d Cir. 2015) (a defendant does not have the right to "elect how the government charges his criminal conduct or the penalty scheme under which he is sentenced").

Rather, *Dowling* concerned whether copyright-infringing materials trafficked across state lines come within the ambit of National Stolen Property Act. It was only in the context of adjudicating that question, after the text and legislative history of the Act did not provide clarity, that the Court looked at Congress's record in imposing penalties for copyright infringement, and concluded that Congress has "acted with exceeding caution." *Dowling*, 473 U.S. at 221. Here, there are a number of factors that distinguish this case from *Dowling*. The text and legislative history are clear: as discussed above, when the Controlled Substances Act was enacted in 1970, Congress intended for distributors to be subject to the provisions of § 841.[1] There is not a backdrop of prior Congressional action that indicates an intent to narrow the scope of the narcotics laws: the Controlled Substances Act predates the regulations in question, and the regulations were promulgated by the executive branch, not Congress, and therefore are not probative of Congress's

---

[1] The recent passage of the SUPPORT Act—which was introduced by Congress to combat the increasing severity of the opioid epidemic by, among other things, amending the Controlled Substances Act to clarify penalties for non-compliant manufacturers and distributors—does not alter the criminal nature of the defendant's conduct under the Act's original provisions. *Cf. United States v. Vogel*, No. 4:08-CR-224, 2009 WL 10673439, at *5 (E.D. Tex. Sept. 2, 2009) ("The passage of new, more detailed legislation regarding the distribution of controlled substances over the Internet does not mean the prior law was vague or unconstitutional"). "An amendment to an existing statute is not an acknowledgement by Congress that the original statute is invalid." *United States v. Tapert*, 625 F.2d 111, 121 (6th Cir. 1980). "'It is a common and customary legislative procedure to enact amendments strengthening and clarifying existing laws.'" *NCNB Tex. Nat'l Bank v. Cowden*, 895 F.2d 1488, 1500 (5th Cir. 1990) (citation omitted). Thus, neither the DEA's regulations nor the new provisions of the Act are a basis to conclude that the provisions of § 841 do not reach the defendant's conduct.

intent. *See United States v. Poet*, 315 F. App'x 389, 393 (3d Cir. 2009) (rejecting challenge pursuant to *Dowling* because there was "no indication that Congress intended that all conduct that is independently violative of the mail fraud statute must instead be prosecuted under the Food, Drug and Cosmetic Act"). Notably, the defendant has not cited a single case requiring the Government to apply a "narrow interpretation" of a defendant's behavior based on the pre-existence of a regulation issued by an agency. And Congress's prior action with respect to regulation of narcotics demonstrates an absence of "exceeding caution." As is discussed above, in passing the Controlled Substances Act in 1970, it was Congress's purpose to increase criminal penalties for, among other things, diversion of controlled substances for illegal purposes.

Finally, even if the defendant was right that *Dowling* requires the Government to pursue regulatory violations, not criminal penalties, when a specific regulation applies to a defendant's conduct, the defendant's conduct as charged in the Indictment significantly exceeds merely failing to maintain effective controls against diversion and to report suspicious orders. (*See* Mot. at 1-2.) In other words, the conduct encompassed in Counts One and Two is more than a simple failure to act. The Indictment alleges that the defendant conspired with other individuals; instructed employees to sell to pharmacy customers with "red flags" of illegality; increased order amounts for those customers; opened new accounts without due diligence; declined to terminate problematic customers; did not report illegality to the DEA; and instructed employees not to report suspicious orders. Therefore, the *Dowling* argument predicated on the regulations cited by the defendant is inapplicable because he is "not charged with failing to report suspicious orders or failing to maintain effective controls—although those violations are allegedly part of the overall conspiracy," but is "alleged to have conspired with . . . others to distribute controlled substances outside the scope of legitimate medical purpose and facilitate their diversion for illicit use." *Rattini*,

2021 WL 848713, at *12-13 (rejecting the argument that a § 841 charge against a pharmaceutical distributor was barred by *Dowling*).

## **CONCLUSION**

Accordingly, the Government respectfully requests that the Court deny the defendant's second motion to dismiss the Indictment.

Dated: New York, New York
June 25, 2021

                                              Respectfully submitted,

                                              AUDREY STRAUSS
                                              United States Attorney for the
                                              Southern District of New York

By:  /s/
      Nicolas Roos
      Alexandra Rothman
      Assistant United States Attorneys
      Tel.: (212) 637-2421 / -2580