UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>    v.<br><br>LAURENCE F. DOUD III,<br><br>                              Defendant. | Case No. 19 Cr. 285 (GBD) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LAURENCE F. DOUD'S MOTION TO DISQUALIFY THE GOVERNMENT'S TRIAL TEAM**

THE JANEY LAW FIRM LLP
Derrelle M. Janey, Esq.
111 Broadway, Suite 701
New York, New York 10006
T: (646) 289-5276

ROBERT C. GOTTLIEB
& ASSOCIATES PLLC
111 Broadway, Suite 701
New York, NY 10006
T: (212) 566-7766

*Attorneys for Defendant
Laurence F. Doud III*

Defendant Laurence Doud, by and through his undersigned attorneys, Robert C. Gottlieb & Associates PLLC and The Janey Law Firm LLP, respectfully submits this memorandum of law in support of his motion to (a) disqualify Assistant United States Attorney ("AUSA") Thomas S. Burnett ("Burnett"), and (b), on the basis of spillover taint stemming from Mr. Burnett's conflict in this criminal proceeding, to disqualify the other members of the Government's current trial team. Mr. Doud makes this application pursuant to Rule 1.11(d)(1) of the New York Rules of Professional Conduct; decades-old pronouncements by the New York Court of Appeals; settled Southern District of New York case law; and U.S. Department of Justice ("DOJ") Office of Legal Counsel internal guidance relating to DOJ ethical considerations spanning five presidential administrations.

Prior to the instant motion, undersigned counsel, first, informed the Government about its concerns as to Mr. Burnett's conflict in this case practically immediately after being informed about his previous private practice involvement in a matter concerning Mr. Doud and Rochester Drug Cooperative ("RDC") and, then, attempted to further confer with the lead members of the Government's trial team once undersigned counsel had learned more that made (1) the conflict obvious and palpable and (2) the spillover taint a clear problem for a fair trial here. In response, the Government's position is that a conflict does not exist and indicated that defense counsel should file its motion. Accordingly, this motion follows.

## PRELIMINARY STATEMENT

Whenever an attorney moves to disqualify another attorney, it must be done deliberately and with a sober mind. No such application should ever reflect gamesmanship of any kind and should only be brought in the rare circumstances where, as here, a motion to disqualify is necessary to preserve and protect the constitutional right of the defendant to due process and a fair trial. It is with such purpose that Mr. Doud brings the instant application.

For the avoidance of doubt, if there be any question that this motion is brought as a means to distract, trick, or delay, such a view is patently false and wrong.  Mr. Doud and his defense team are ready for trial.  Nevertheless, under the facts and circumstances here, especially where the applicable ethics rules and the case law show that this is not a close question, we are compelled to bring this motion.  Immediately before joining the Government, Mr. Burnett was in private practice as an attorney at the law firm Kirkland & Ellis in its New York office.  While there, Mr. Burnett played a material and substantial role in two different litigations defending, first, a group of pharmaceutical manufacturer defendants against RDC and others in *In re: Niaspan Antitrust Litigation*, MDL 2460, Master File No. 2:13-md-2460 (United States District Court for the Eastern District of Pennsylvania) and then, second, a group of pharmaceutical manufacturers in *In re: Lamictal Direct Purchaser Antitrust Litigation*, Master File No. 12-995 (United States District Court for the District of New Jersey) in antitrust litigations where RDC was a class plaintiff.

In those cases, Joseph Brennan, a person the Government has identified as an unindicted co-conspirator whose statements the Government proposes to this Court for the Government to use at trial in order to prove Mr. Doud's involvement in a criminal conspiracy, and Larry Doud, the defendant, were deposed at length as the RDC Rule 30(b)(6) witnesses.  The topics at those depositions were not limited to the particular drugs about which RDC as a putative lead class plaintiff was making allegations; at the Rule 30(b)(6) depositions, the areas of inquiry noticed by the defendants included (1) the process by which RDC purchased pharmaceuticals generally; (2) the "incentives or promotions" by which RDC "participates" or "offers" purchasers to purchase drugs; (3) the methodology used and factors considered by RDC in its "decisions to purchase and/or price name brand pharmaceuticals"; and (4) "forecasting, planning, and/or any related methodology" RDC used "(or could use) in purchasing or selling pharmaceuticals." *See* Gottlieb's Declaration, **Exhibit 3,** Kohn's Declaration Exhibits M, N.   The areas of examination were broad and expansive providing Mr. Burnett with potentially critical information about RDC for the

3

purposes of this criminal trial, including statements made by alleged co-conspirators that might, in turn, inform the questioning of witnesses by the Government, as well as strategy for the Government's proposed financial expert and others. None of this information is available to the defense here. That this situation creates overwhelming prejudice to Mr. Doud is non-controversial, despite the Government's position that, in sum and substance, there is no problem here. Moreover, on the law, as elaborated herein below, no actual proof of prejudice is required. *See Mura v. Thomas*, 2020 WL 2086039, at 4 (SDNY Apr. 30, 2020). That the dynamic exists is sufficient from an ethics perspective to justify disqualification.

In both cases, Mr. Burnett wrote and signed the declaration on behalf of the defendants in support of their opposition to class certification, in *In re: Niaspan Antitrust Litigation* in February 2019 as well as in *In re: Lamictal Direct Purchaser Antitrust Litigation* in October 2018. Further, Mr. Burnett represented the defendants during depositions in those cases, namely in expert discovery. Additionally, Mr. Burnett had access to thousands of fact discovery materials, including the depositions described, *supra*, of Mr. Doud and Mr. Brennan. Again, none of these materials are available to the defense here because those materials are subject to a protective order.

A Government prosecutor joining a trial team where his immediate prior employment involves an action(s) involving the defendant—where the defendant made statements, where an alleged co-conspirator made statements, and where the information obtained during discovery in those actions provide a broad swath of information that could well be within the scope of issues at Mr. Doud's criminal trial—is rank undermining of Mr. Doud's constitutional right to due process and a fair trial. This is not mere lawyer argument by Mr. Doud's defense team. Courts in the State of New York have held that **"disqualification is required when there is the appearance of impropriety and the risk of prejudice attendant on abuse of confidence, however slight**." *See People v. Sears*, 181 AD3d 1290, 1291 (4th Dep't 2020), quoting *People v. Shinkle*, 51 N.Y.2d 417 (1980). Moreover, federal courts within the Southern District of New York have repeatedly held

that disqualification is warranted when an attorney's conduct poses a significant risk of trial taint. *See*, *e.g.*, *TAL Properties of Pomona, LLC v. Vil. of Pomona*, 19-CV-06838 (PMH), 2020 WL 7773575, at 1 (SDNY Dec. 30, 2020). However rare disqualification occurs, we submit that there is no question it must happen here. The very appearance of impropriety is overwhelming on these facts, as further discussed below. That the risk of prejudice is "however slight" is non-controversial. *See Shinkle*, 51 N.Y.2d 417 (1980).

Finally, the ethics rule in this area is black and white. New York Rules of Professional Conduct, Rule 1.11(d)(1), in pertinent part, states: **"Except as law may otherwise expressly provide, a lawyer currently serving as a public officer or employee may not participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment…"** Yet, again, when this issue was brought to the Government's attention, the response was dismissive, stating that Mr. Burnett's prior employment had been reviewed by the U.S. Attorney's Office previously and, in sum and substance, there was no issue having him on this Government trial team. That view, in and of itself, is striking given the case law and guidance in this area. But, perhaps more incredible, is any notion that Mr. Burnett was brought onto this particular trial team for benign reasons; it strains credulity to believe that Mr. Burnett was added just a couple months ago to lend a helping hand. The appearance is that Mr. Burnett was added to this trial team in order to tap his inside knowledge in an effort to gain advantage against Mr. Doud.

## STATEMENT OF FACTS

Unsolicited and unprompted, RDC's long-held antitrust counsel, Mr. Peter Kohn ("Kohn"), of the law firm Faruqi and Faruqi LLP, contacted undersigned counsel, out of duty as an officer of the court, to present information about Mr. Burnett's involvement in *Niaspan* and *Lamictal*. *See* Gottlieb's Declaration, **Exhibit 3,** Kohn's Declaration. We submit that on the basis of the Kohn

testimony and other information, Mr. Burnett's involvement in the prior matters, described *supra*, is nothing short of material and substantial. In pertinent part, Mr. Kohn testifies as follows:

- In the *Niaspan* case, Mr. Burnett first appeared in November of 2017. In the *Lamictal* case, Mr. Burnett first appeared in April of 2018. *See* Gottlieb's Declaration, **Exhibit 3** at 1 ¶ 4, Kohn's Declaration.

- AUSA Burnett's chief role in both the *Niaspan* and *Lamictal* was to oppose the class that RDC and its co-plaintiffs sought to certify under Fed. R. Civ. P. 23. Thus, in *Niaspan*, Mr. Burnett was the defense lawyer who took the declaration opposing class certification. He did the same in *Lamictal*. *See* Gottlieb's Declaration, **Exhibit 3** at 1-2 ¶ 5, Kohn's Declaration.

- Mr. Burnett did not withdraw his appearance in either case until December of 2019, after discovery was concluded in each, after class certification proceedings in *Niaspan* were concluded, and after class certification appellate briefing was closed in *Lamictal*. *See* Gottlieb's Declaration, **Exhibit 3** at 3 ¶ 6, Kohn's Declaration.

- In both *Niaspan* and *Lamictal*, the court entered protective orders shielding from disclosure deposition testimony and documents produced in discovery that bore confidentiality designations. In *Lamictal*, the protective order provides: "All Confidential and Attorneys' Eyes Only material shall be used by the receiving party solely for purposes of the prosecution or defense of this action; shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose; and shall not be disclosed by the receiving party to anyone other than those set forth in Paragraph 4, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by Order of the Court." *See* Gottlieb's Declaration, **Exhibit 3** at 3 ¶¶ 7,8, Kohn's Declaration.

- In *Niaspan*, the protective order provides: "Materials designated as 'CONFIDENTIAL' or 'ATTORNEYS' EYES ONLY' pursuant to this Protective Order shall be used by a party receiving such materials ('Receiving Entity') only in this Litigation and solely for the purposes of conducting this Litigation, including any appeals therefrom, and not for any other purpose whatsoever." In both *Niaspan* and *Lamictal*, defendants sought, under Fed. R. Civ. P. 34, document discovery from RDC relating to many topics, including the topic of class certification, upon which topic Mr. Burnett's involvement in both cases centered. *See* Gottlieb's Declaration, **Exhibit 3** at 4 ¶¶ 9,10, Kohn's Declaration.

- RDC's document production in *Niaspan* reached to Bates number RDC23908, was designated "Attorneys' Eyes Only" or "Confidential" under the protective order in that case, and predated Mr. Burnett's declaration in opposition to class certification in *Niaspan*. *See* Gottlieb's Declaration, **Exhibit 3** at 4 ¶ 11, Kohn's Declaration.

- In that document production, Laurence Doud or Joseph Brennan's name appears on 47 documents (or 125 documents when including entire document "families" in the count). All of the documents contained one or more search terms supplied by the defense lawyers in the *Niaspan* case and/or were otherwise responsive to Rule 34 document requests served on RDC. The only persons permitted under the protective order to see, hear about, or use the information from RDC's document production in *Niaspan* are counsel in that case, including Mr. Burnett and myself, and limited to use in the *Niaspan* case only. Neither Mr. Doud nor his lawyers in this matter were or are permitted access. *See* Gottlieb's Declaration, **Exhibit 3** at 4 ¶ 11, Kohn's Declaration.

- RDC's document production in *Lamictal* reached to Bates number RDC-LAMIC-66666, was designated "Attorneys' Eyes Only" under the protective order in that

7

case, and predated Mr. Burnett's declaration in opposition to class certification in *Lamictal*. In that document production, Laurence Doud or Joseph Brennan's names appear on 694 documents (or 1,416 documents when including entire document "families" in the count). *See* Gottlieb's Declaration, **Exhibit 3** at 5 ¶ 12, Kohn's Declaration.

- All of the documents contained one or more search terms supplied by the defense lawyers in the *Lamictal* case and/or were otherwise responsive to Rule 34 document requests served on RDC. The only persons permitted under the protective order to see, hear about, or use the information from RDC's document production in *Lamictal* are counsel in that case, including Mr. Burnett and myself, and limited to use in the *Lamictal* case only. Mr. Doud and his lawyers in this matter are not permitted access. *See* Gottlieb's Declaration, **Exhibit 3** at 5 ¶ 12, Kohn's Declaration.

- In both *Niaspan* and *Lamictal*, defendants sought, under Fed. R. Civ. P. 30(b)(6), RDC's deposition in its role as a proposed class representative. The topics of the depositions were numerous: 37 topics in *Niaspan* and 23 in *Lamictal*. *See* Gottlieb's Declaration, **Exhibit 3** at 5 ¶ 13, Kohn's Declaration.

- Mr. Burnett's name can be seen on Ex. M as counsel for several of the defendants. RDC's Rule 30(b)(6) designee in *Niaspan* was Joseph Brennan, who succeeded Mr. Doud as CEO of RDC. The deposition was taken on February 20, 2018 (before Mr. Burnett's declaration in opposition to class certification in *Niaspan*) and comprises 219 pages and 20 exhibits, all of which were designated "Highly Confidential – Attorneys' Eyes Only" under the *Niaspan* protective order. *See* Gottlieb's Declaration, **Exhibit 3** at 5 ¶ 14, Kohn's Declaration.

- Mr. Doud was expressly discussed at least seven (7) times. The only persons permitted under the protective order to see, hear about, or use the information from RDC's deposition transcript in *Niaspan* are counsel in that case, including Mr. Burnett and myself, limited to use in the *Niaspan* case only. Neither Mr. Doud nor his lawyers in this matter are permitted access. *See* Gottlieb's Declaration, **Exhibit 3** at 5 ¶ 14, Kohn's Declaration.

- RDC's Rule 30(b)(6) designee in *Lamictal* was Laurence Doud. The deposition was taken on September 19, 2017 (before Mr. Burnett's declaration in opposition to class certification in *Lamictal*) and comprises 270 pages and 20 exhibits, all of which were designated "Confidential – Attorneys' Eyes Only" under the *Lamictal* protective order. *See* Ex. P (cover page). The only persons permitted under the protective order to see, hear about, or use the information from RDC's deposition transcript in *Lamictal* are counsel in that case, including Mr. Burnett and myself, limited to use in the *Lamictal* case only. Mr. Doud and his lawyers in this matter are not permitted access. *See* Gottlieb's Declaration, **Exhibit 3** at 5-6 ¶ 15, Kohn's Declaration.

We submit that, among other things, on the basis of Kohn's testimony alone, (a) that Mr. Burnett's involvement in the prior actions are material and substantial cannot be disputed and (b) the insider information Mr. Burnett developed through those matters substantially prejudices Mr. Doud.

## ARGUMENT

### I. Applicable Ethics Rules and Guidance

The long-standing ethics rules at issue make it clear that disqualification should occur in this instance.

### A. Rule 1.11 of the New York Rules of Professional Conduct - Special Conflicts of Interest For Former And Current Government Officers And Employees

Rule 1.11(d)(1) of the New York Rules of Professional Conduct, namely, Special Conflicts of Interest For Former And Current Government Officers And Employees (the "Rule"), provides in part: Except as law may otherwise expressly provide, a lawyer currently serving as a public officer or employee shall not: (1) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment..."

The December 2021 Update of Simon's New York Rules of Professional Conduct Annotations offers a detailed phrase-by-phrase analysis of the Rule, starting with the phrase 'participate in a matter.' The unmodified word "participate," as Professor Simon notes, "is much broader than the talismanic phrase "participated personally and substantially." *See* § 1.11:37 Phrase-by-phrase analysis, Simon's NY Rules of Prof. Conduct (December 2021). "The drafters could have written Rule 1.11(d)(1) to prohibit a public servant from participating "personally and substantially" in a matter in which the lawyer participated personally and substantially while in private practice." *Id.* "The drafters knew how to write "personally and substantially" when they wanted to. They did not do so in the opening words of Rule 1.11(d)(1). Accordingly, a lawyer who meets the remainder of subparagraph (d)(1) is barred from any and all "participation"— even insignificant or transient participation—in a matter covered by subparagraph (d)(1). **The disqualified lawyer may not supervise other lawyers working on the matter, discuss the case with them, review documents, appear in court, observe others appearing in court, or otherwise participate in any fashion in the forbidden matter**." *Id.* "In effect, Rule 1.11(d)(1) imposes screening by operation of law on a disqualified lawyer. Thus, government offices should follow the screening procedures outlined in Rule 1.11(b)(1)(i)-(ii) to comply with the "no participation" provision of Rule 1.11(d)(1)." *Id.* Importantly, "screening under Rule 1.11(d)(1) will not work if there is an "appearance of impropriety." *See* § 1.11:43 Imputation of conflicts within a government law office, Simon's NY Rules of Prof. Conduct (December 2021).

While the New York Rules of Professional Conduct "do not define personal and substantial participation," he notes relevant facts such as:

> (1) "served in a more than nominal supervisory role";
> (2) "had knowledge of government confidences and secrets relevant to the proposed representation of the same defendants";
> (3) "provided coverage for other ADAs";
> (4) "was kept apprised of cases in the office"; and
> (5) had "access to the case files and other information regarding cases in the prosecutor's office."

§ 1.11:4 Introduction, Simon's NY Rules of Prof. Conduct (December 2021).

Professor Simon continues that it is also helpful in interpreting the phrase "participated personally and substantially" by looking towards the "ABA Formal Op. 342 (1975), where the ABA Standing Committee on Ethics and Professional Responsibility defined the similar phrase "substantial responsibility" in the ABA Model Code version of DR 9-101(B). The ABA ethics committee said:"

> "[S]ubstantial responsibility" envisages a much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the matter in question. It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question." *Id.*

Here, too, the ABA model rule emphasizes whether the attorney has had "substantial" involvement, as more elaborated herein below.

**B.  The American Bar Association ("ABA") Model Rules**

The ABA model rules of professional conduct mimic the New York rules.  More specifically, the ABA Rule 1.11(d) Special Conflicts of Interest for Former & Current Government Officers & Employees provides in part:

> (d) Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee:
> (2) shall not:
> (i) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment,

unless the appropriate government agency gives its informed consent, confirmed in writing…

In other words, there is consistency in treatment on this issue across ethics canons. All of the canons deem "substantial" involvement as the trigger for disqualification.

### C. U.S. Department of Justice & Executive Branch Guidance

On January 20, 2021, by executive order, United States President Joseph R. Biden mandated that all appointees in the executive branch pledge to adhere to the "Revolving Door Ban" which states that all entering employees will not, "for a period of 2 years from the date of [their] appointment participate in any particular matter involving specific parties that is directly and substantially related to my former employer or former clients, including regulations and contract." *See* Gottlieb's Declaration, **Exhibit 5** at 1, President Biden's Executive Order- Ethical Pledge.[1] This ethics pledge is consistent with long-standing internal DOJ guidance from over the past three decades.

More particularly, in 1985, the DOJ's Office of Legal Counsel concluded in a memorandum opinion entitled "Disqualification of Prosecutor Because of Former Representation"("1985 Memorandum") that "the Ethical Considerations of the Model Code, including the requirement that attorneys avoid even the appearance of professional impropriety, as well as the constitutional protections afforded a criminal defendant, **might lead a court to bar the AUSA's involvement in the prosecution of individuals whose interests are so closely intertwined with the subject of his former professional activities. The ethical obligations of attorneys are only heightened in the case of a public prosecutor.** We therefore recommend for prudential reasons that the AUSA not participate in any investigations or prosecutions foreseeably involving [the criminal defendant and corporate affiliates] that relate to his prior representation,

---

[1] Undersigned counsel recognizes that President Biden's ethical pledge mandate applies only to appointees within the Executive branch which Mr. Burnett is not. Moreover, we recognize Mr. Burnett's employment at the DOJ predates the effective date of the pledge, January 20, 2021. Nevertheless, we offer the ethical pledge as an exemplar of the posture throughout the Executive branch all must adhere to when charged with the public's trust.

12

assuming that his participation is not considered essential to the conduct of the Department's law enforcement operation, even though his disqualification may not be clearly compelled by the prevailing ethics rules." *See* Gottlieb's Declaration, **Exhibit 4** at 2, 1985 Memorandum.

The 1985 Memorandum also set a standard for evaluating where the relationship between the attorney and the defendant was held to be too attenuated to require automatic disqualification from the subsequent matter: the attorney will be permitted to prosecute the case **only if he could not possibly have gained confidential information regarding it**. *See* Gottlieb's Declaration, **Exhibit 4** at 6, 1985 Memorandum. The 1985 Memorandum premises this view on a substantial body of law. *Id.* Specifically, the opinion memorandum lists: *Gajewski v. United States*, 321 F.2d 261, 268 (8th Cir. 1963) (no disqualification from criminal prosecution on account of prior civil representation because misuse of confidential information inconceivable); *Dunn v. State*, 264 So. 2d 823, 825 (Miss. 1972) (no disqualification on account of prior discussion with defendant regarding possible representation, because facts of case never discussed); *Autry v. State*, 430 S.W.2d 808, 810 (Tenn. Crim. App. 1967) (same; no confidential communication passed between attorney and accused); *State v. Henry*, 9 So. 2d 215, 217 (La. 1942) (no disqualification on account of discussion with defendant's relatives; trial court found attorney had "no information of any kind from the defendant or anyone else" regarding case). If the court is satisfied that no such information was acquired, disqualification will not be ordered. *See* Gottlieb's Declaration, **Exhibit 4** at 6, 1985 Memorandum.

## II.     Caselaw Considerations

"Courts have the discretion to disqualify counsel because of their independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession, and that legal proceedings "appear fair to all who observe them." *United States v. Huawei Technologies Co. Ltd.*, 2020 WL 903007, at 3 (E.D.N.Y., 2020). The ultimate reason for disqualification is harm

to the integrity of the judicial system. *Murray v. Metropolitan Life Ins. Co.,* 583 F.3d 173, 178 (2d Cir. 2009).

Of course, in the Southern District, the "[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted." *TAL Properties of Pomona, LLC v. Vil. of Pomona*, 19-CV-06838 (PMH), 2020 WL 7773575, at 1 (SDNY Dec. 30, 2020) (quoting *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985)); *see also Streichert v Town of Chester, New York*, 19-CV-7133 (KMK), 2021 WL 735475, at 4 (SDNY Feb. 25, 2021)("The Court's role [] is not to police each and every violation of professional rules, but rather to ensure that the proceeding before it is free from taint*"*); *see also Mura v Thomas*, 2020 WL 2086039, at 4 (SDNY Apr. 30, 2020)("The Court should not disturb a client's choice of counsel unless the attorney's representation would so taint the prosecution or defense of a matter as to call into question the integrity of the adversarial process); *see e.g. Giuffre v. Dershowitz*, 515 F Supp 3d 123, 128 (SDNY 2021)("…the business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it.") Importantly, "to establish that such a risk [of trial taint] exists, the moving party must identify a violation of the Canons" or state rule of professional responsibility. *See In re Corp. Resource Services*, Inc., 595 BR 434, 448 (SDNY 2019). Here, as discussed *supra*, the rules of professional responsibility are directly implicated. Mr. Burnett's violation of the New York Rules of Professional Conduct Rule 1.11(d)(1) is clear: he is a current government lawyer who participated in the instant matter notwithstanding his substantial involvement in a prior case wherein facts, covered by a protective order, are only known to him gained from his prior private employ. Without a doubt, the at-bar "circumstances [] fly far beyond the mere image of impropriety and [] instead pose a palpable and significant risk of taint to the trial." *See Galloway v. Nassau County*, 2021 WL 5013735, at 5 (EDNY Oct. 27, 2021).

Further, any doubt with respect to whether disqualification should be ordered is to be resolved in favor of disqualification. *Mura v Thomas*, 2020 WL 2086039, at 4 (SDNY Apr. 30, 2020); *see also Huawei Techs. Co. Ltd.*, 2020 WL 903007 at 3 (EDNY 2020) ("...the Second Circuit has cautioned that any doubt is to be resolved in favor of disqualification."). In *Huawei,* a recent criminal matter within this Circuit, the Government moved to disqualify one of defendant Huawei's attorneys who formerly served as the DOJ's deputy attorney general, Mr. Cole. The Government asserted that Mr. Cole "personally supervised and participated in" an investigation that is "directly implicated" in this case … and [] "he ha[d] access to privileged (and classified) factual information as a Department attorney that would give him an improper advantage in representing his current clients," namely Huawei. *Id.* at 1. In ruling to disqualify Mr. Cole, the *Huawei* court reasoned that "[d]isqualification is most commonly ordered when "an attorney is ... potentially in a position to use privileged information concerning the other side" that was gained "through prior representation" thereby creating taint. *Id*. 3. Additionally, the court reaffirmed the proposition that "[k]nowledge of "confidential information regarding any direct evidence [the Government] will adduce at trial" is grounds for disqualification." *Id*. at 4. That is no different than the instant situation, even if, here, the attorney is a Government prosecutor. The principle is the same: where the attorney had direct knowledge of confidential information in a matter related to the criminal defendant through his prior experience, the taint is established.

Additionally, as further described below, other factors courts consider when confronted with applications to disqualify weigh in Defendant's favor. For instance, in the Southern District, courts take into consideration the prejudicial delay in which a party brings forth motion to disqualify Government attorney. For instance, in the matter *United States v. Newman,* 534 F.Supp. 1113, 1127 (S.D.N.Y.1982), a criminal defendant's delay in bringing motion to disqualify entire U.S. Attorney's office until shortly before trial was deemed to have caused prejudice to the Government. Additionally, in *Softel, Inc. v. Dragon Medical and*

15

*Scientific Communications Ltd.*, 1995 WL 75490, at 4 (S.D.N.Y. 1995), the court noted a New Jersey district case wherein plaintiffs' three-year delay in bringing motion to disqualify defendant's attorney was determined to be prejudicial to defendant where defendant's attorney had handled all of defendant's pretrial preparation and motion was brought four months before trial. *Id.* Further, Southern District courts, in determining whether a lawyer did or did not have substantial involvement in a case, considered the amount of discovery that took place in the previous at-issue action. *See Green v. City of New York*, 2011 WL 2419864, at 2–3 (S.D.N.Y.2011). Here, Mr. Doud's application for disqualification is timely made.

### III. Law Applied To The Instant Matter

As detailed above, Mr. Burnett's conduct in the instant matter, on the one hand, and his substantial involvement in the prior matter, on the other hand, as elaborated therein by Kohn's Declaration, makes a mockery of Rule 1.11(d) of the New York Rules of Professional Conduct. Professor Simon's detailed analysis further highlights the seriousness of the situation here when measured against every prong of Rule 1.11(d). That the ethics rules compel disqualification here is not a close question.

Further, when measured against the decision and reasoning set forth in *United States v. Huawei Technologies Co. Ltd.*, 2020 WL 903007 (E.D.N.Y. 2020), this is no doubt that Mr. Doud's application here should be granted. In *Huawei*, the court deemed the disqualified counsel to have a "improper advantage" based on his "participat[ion]" in a prior investigation that "directly implicated" his current case. *Id.* There is no difference in the instant matter. As a result of his prior involvement, Mr. Burnett "ha[d] access to privileged (and classified) factual information."

**CONCLUSION**

Based on the foregoing, Mr. Doud respectfully requests that this Court grant his motion to (a) disqualify Mr. Burnett, and (b), on the basis of spillover taint stemming from Mr. Burnett's conflict in this criminal proceeding, to disqualify the other members of the Government's current trial team.

Dated: New York, New York
December 20, 2021

                                                Respectfully submitted,

By:   /s/ Derrelle M. Janey
Derrelle M. Janey, Esq.

THE JANEY LAW FIRM LLP
Derrelle M. Janey, Esq.
111 Broadway, Suite 701
New York, New York 10006
T: (212) 566-7766
djaney@thejaneylawfirm.com


/s/ Robert C. Gottlieb
Robert C. Gottlieb, Esq.

ROBERT C. GOTTLIEB &
ASSOCIATES PLLC
Robert C. Gottlieb, Esq.
111 Broadway, Suite 701
New York, New York 10006
T: (212) 566-7766
rgottlieb@robertcgottlieblaw.com