

Robert C. Gottlieb & Associates PLLC
Trinity Building
111 Broadway, Suite 701
New York, NY 10006
Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com
New York · Rome

January 9, 2022

**VIA ECF**
The Honorable Judge George Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

RE: *United States v. Laurence Doud III*, 19 Cr. 285 (GBD)

**Confronting the Witness with His Prior Statements Pursuant to Federal Rule of Evidence 613(b)**

Dear Judge Daniels:

As you know, this law firm represents Laurence Doud in the above-referenced criminal matter currently scheduled to begin trial on January 12, 2022. **We respectfully submit this letter in opposition to the Government's letter motion to preclude evidence of William Pietruszewski's attorney's communications with the Government related to Mr. Pietruszewski's guilty plea.** Gov't Motion to Preclude ("Mot."), ECF No. 122. These communications are: (1) emails between Mr. Pietruszewski's attorney and the prosecuting Assistant United States Attorneys ("AUSAs") which unequivocally demonstrate that **Mr. Pietruszewski did not and could not admit** to having **knowledge** of the diversion of controlled substances or the **intent** to join a criminal conspiracy; and (2) an internal email among the attorneys for the Government laying out precisely what Mr. Pietruszewski's attorney said regarding Mr. Pietruszewski's *mens rea*. Should Mr. Pietruszewski testify at the trial contrary to his previous statements, the Federal Rules of Evidence indisputably provide that Mr. Doud is permitted to impeach his testimony using extrinsic evidence of his prior inconsistent statements. FED. R. EVID. 613(b).

Furthermore, the Government's letter misrepresents the defendant's intended use of this evidence. These emails would not be offered for the truth of what they assert, and, critically, are not confidential communications between Mr. Pietruszewski and his attorney. Thus, they are neither hearsay statements nor protected by the attorney-client privilege.

It is not the defendant's intention to question Mr. Pietruszewski about confidential communications with his attorney but rather to inquire about statements that his attorney made on

his behalf as his agent. *Schwab v. Philip Morris USA, Inc.*, 04 CV 1945 (JBW), 2005 WL 2467766, at *3 (E.D.N.Y. Oct. 6, 2005) ("The relationship between an attorney and the client he or she represents in a lawsuit is one of agent and principal.") (quoting *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994). These statements were made by Mr. Pietruszewski's attorney during plea negotiations and thus are appropriate material for cross-examination. *See United States v. Aronoff*, 466 F. Supp. 855, 860–61 (S.D.N.Y. 1979) (granting pre-trial motion to allow testimony based on statements made by defendant's counsel in pre-trial negotiations).

Additionally, the Government's concerns regarding both privilege and hearsay would be obviated by introducing the extrinsic impeachment evidence through the testimony of either Mr. Pietruszewski's attorney, William Hughes, or one of the AUSAs with whom Mr. Hughes was communicating. *See Weber v. McCormick*, 06 CV 2009 (PCD), 2008 WL 11489045 at *3 (D. Conn. March 3, 2008) (holding that attorney-client privilege would not be violated by compelling attorneys to testify at depositions about negotiations they undertook while representing plaintiff in a previous criminal matter); *see also United States v. Amato*, 03 CR 1382 (NGG), 2006 WL 1891113 at *1 (E.D.N.Y. June 27, 2006) (finding no hearsay concern when defendant impeached government witness testimony by calling FBI agents to testify as to contents of interview reports they prepared). *United States v. Amato* is particularly instructive on this point because, as discussed more fully below, in permitting the defendant to call third-party witnesses to testify to the contents of documents they had prepared relaying a government witness' prior statements, the *Amato* Court found that such evidence was **not** improper hearsay.

For these and the following reasons, none of the arguments raised by the Government in their letter warrant the preclusion of this evidence, and we therefore respectfully request that the Court deny the Government's request to preclude this evidence.

1. **Background**

The Government produced, as part of both its Rule 16 disclosures as well as Mr. Pietruszewski's Section 3500 materials, emails between Mr. Pietruszewski's counsel and members of the prosecution team discussing exactly what conduct Mr. Pietruszewski would— and would not— be able to admit to committing during his guilty plea allocution, as well as an internal prosecution email memorializing those discussions. These emails clearly show that the Government wanted Mr. Pietruszewski to allocute to the fact that he and others agreed to distribute controlled substances to pharmacies that he "knew or consciously avoided knowing were distributing those drugs illegally." Emails Between William Hughes and the USAO, Ex. A., at 2. Mr. Pietruszewski's attorney's response to this point is clear: **"[h]e can't say that he knew. He strongly suspected in several cases, but . . . he really did not know. . . ."** *Id.*, at 5.

Furthermore, at his plea hearing, Magistrate Judge Parker asked Mr. Pietruszewski if he knew "that a purpose of the conspiracy was to distribute these drugs outside the scope of professional practice and without a legitimate medical purpose[]" to which Mr. Pietruszewski answered "I think." Tr. of William Pietruszewski's Guilty Plea Allocution, Ex. B., at 25:4–9. Later in the hearing, Judge Parker asked Mr. Pietruszewski if he knew what he was doing was wrong, and Mr. Pietruszewski's answer seems to indicate that he only realized it was against the law after the fact. *See id.*, at 25:20–24.

These statements demonstrate that during the time period covered by the instant indictment, Mr. Pietruszewski lacked knowledge of diversion occurring at customer pharmacies and did not intend to enter into a criminal conspiracy (as he did not know any criminal activity was occurring). Thus, should Mr. Pietruszewski take the stand during trial and testify that he did have knowledge of diversion or intended to join a conspiracy, the defendant should be permitted, under Rule 613, to impeach his testimony on the basis of these prior inconsistent statements made by Mr. Pietruszewski through his attorney-agent.

2. **Applicable Law**

Rule 613 of the Federal Rules of Evidence permits the impeachment of a witness with his prior inconsistent statement. FED R. EVID. 613. Extrinsic evidence of a prior inconsistent statement may be introduced under Federal Rule of Evidence 613(b) for the purpose of impeaching a witness' credibility if: "(1) the statement is inconsistent with the witness's trial testimony; (2) the witness is afforded an opportunity to deny or explain the same; and (3) the opposing party is afforded the opportunity to cross-examine the witness thereon." *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995) (citing FED. R. EVID. 613(b)).

The "statements need not be diametrically opposed to be inconsistent." *United States v. Agajanian*, 852 F.2d 56, 58 (2d Cir. 1988) (quotations omitted). The determination of whether the statements are inconsistent is left to the discretion of the trial judge. *Id.* The test for inconsistency is whether there is "any variance between the statement and the testimony that has any reasonable bearing on credibility." *U.S. v. Trzaska*, 111 F.3d 1019, 1025 (2d Cir. 1997). "[T]he test should be, could the jury reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a . . . statement of this tenor?" *Id.* (quoting 1 McCormick on Evidence § 34, at 115 (4th ed., 1992)).

3. **Discussion**

If Mr. Pietruszewski testifies at trial that he had knowledge of diversion or intended to join a conspiracy, based on statements made by him through his attorney-agent, that testimony would clearly be inconsistent in a way that would bear upon his credibility. *See Trzaska*, 111 F.3d at 1025. Thus, the defendant must be permitted to impeach such testimony. If, after being cross examined about his attorney's representations on his behalf, Mr. Pietruszewski continues to testify inconsistently, the defendant should be permitted to introduce extrinsic evidence to impeach his testimony as all of the requirements of Rule 613(b) would be met.[1] *See Strother*, 19 F.3d at 874.

The concerns raised by the Government in its motion are addressed below. For the reasons that follow, none of these arguments warrant the exclusion of this evidence from the trial.

---

[1] The Government must also be afforded the opportunity to cross-examine Mr. Pietruszewski about these statements. *See Strother* 19 F.3d at 874.

Robert C. Gottlieb & Associates PLLC · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com

3

### a. The Defendant's Contemplated Impeachment Would Not Infringe on Attorney-Client Privilege

Questioning Mr. Pietruszewski regarding statements made through his attorney-agent would not implicate the attorney-client privilege because Mr. Pietruszewski would not be asked to reveal confidential communications he made to his attorney. In his communications with the Government, Mr. Pietruszewski's attorney was acting as his agent with both actual and apparent authority. Therefore, the representations that he made in those emails can be imputed onto Mr. Pietruszewski. *See United States v. International Broth. Of Teamsters, Chauffeurs, Warehousement and Helpers of America, et al*, 986 F.2d 15, 20 (2d Cir. 1993) (because attorney was acting as agent of clients, statements of attorney imputed to clients and binding upon them).[2] Therefore, the defendant would in essence be questioning Mr. Pietruszewski about statements he himself made through his attorney to a third party, and privilege would not be implicated.

It is also worth noting that in any event Mr. Pietruszewski's attorney likely waived the privilege with regard to Mr. Pietruszewski's statements regarding his knowledge of diversion and his intent to join a conspiracy when the attorney communicated the substance of those remarks to the prosecuting AUSAs.[3] *See Aronoff*, 466 F. Supp. at 860–61 (holding the privilege waived in regard to statements made by defendant's attorney during pre-trial negotiations); *see also S.E.C. v Beacon Hill Asset Mgt. LLC*, 231 F.R.D. 134, 146 (S.D.N.Y. 2004) ("Voluntary disclosure to a party outside the attorney-client relationship destroys the attorney-client privilege because it destroys the confidentiality of the communication." (citations omitted)). Thus, any concerns the Court may have with regard to the attorney-client privilege are doubly assuaged.

### b. Hearsay Issues Would be Obviated by Calling One of the Attorneys to Testify

If necessary, the defendant should be permitted to impeach Mr. Pietruszewski using the emails described above as extrinsic evidence of his prior inconsistent statements. Any concerns related to hearsay regarding these email communications would be eliminated by introducing the emails through the testimony of one of the attorneys who personally participated in the exchange (namely either Mr. Pietruszewski's attorney, William Hughes, or one of the AUSAs). In *United States v. Amato*, a government witness testified at trial and made statements allegedly inconsistent with his previous statements made to FBI agents. *Amato*, 2006 WL 1891113 at *1. The defendant in *Amato* sought to impeach the witness' statements by calling the FBI agents and having them testify as to the contents of reports they created after interviewing the witness. *Id*. The *Amato* Court held that while the reports could not be introduced as substantive evidence, the defendant could call the agents who prepared the reports in order to testify regarding the inconsistent statements contained therein.[4] *Id.* at *5. While the instant case involves attorneys and not FBI

---

[2] In other evidentiary contexts as well, the representations of an attorney are attributable to his client. *See United States v. Margiotta*, 662 F.2d 131, 142–43 (2d Cir. 1987) (statements of attorney admissible as statements of client under Rule 801).

[3] While the ability to waive the attorney-client privilege is generally held by the client, an attorney can have implied authority to waive the privilege on behalf of his client. *In re Von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (citing 8 J. Wigmore, *Evidence* § 2325 (McNaughton rev. ed. 1961)).

[4] It is important to note that in this case, the defendant would similarly not seek to introduce the emails as substantive evidence, but rather as extrinsic evidence of Mr. Pietruszewski's prior inconsistent statements, for the purposes of impeachment.

4

Robert C. Gottlieb & Associates PLLC · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com

agents, it presents the same concept. The defendant should be permitted to call a third party (one of the attorneys) to testify as to inconsistent statements of a witness contained in a document (in this case, the emails), in order to impeach the testimony of that witness (Mr. Pietruszewski). Thus, just as in *Amato*, the issue of improper hearsay is not implicated here, and the defendant should be permitted to introduce this extrinsic evidence.

### c. Rule 608 is Irrelevant Here

The Government argues that these emails should be excluded because extrinsic evidence is not permitted to impeach a witness' character for truthfulness under Rule 608. Mot., at 4. This argument misconstrues the purpose of introducing this evidence. This evidence would be introduced for the purpose of impeaching Mr. Pietruszewski based on his prior inconsistent statements, not his character for truthfulness. Thus, extrinsic evidence should be allowed as this situation clearly meets the requirements of Rule 613(b), as discussed above.

### d. Introduction of this Evidence Would Not Confuse the Jury

The Government next argues that having Mr. Pietruszewski testify as to the contents of the emails between his attorney and the prosecutors would require: (1) him to speak for the words of others, and (2) an explanation of the roles of the government and a criminal defendant in a plea negotiation, both of which would confuse the jury. Mot., at 3–5. As discussed above, calling one of the attorneys who was party to the communication would remove any concerns about confusion due to Mr. Pietruszewski testifying about statements made by the attorneys. Next, an explanation of the plea negotiation process is not necessary here. In the event Mr. Pietruszewski testifies that he had knowledge of diversion and/or intended to join a criminal conspiracy, this evidence would be offered simply to show that at an earlier point his attorney represented that he said something different. No "mini-trial" or "tutorial on Rule 11" would be required. The primary authority offered by the Government to support its theory of jury confusion, an evidentiary Order by Judge Failla in *United States v. Ahuja*, is inapposite here. That Order addresses whether a defendant should be permitted to call a prosecutor to testify regarding proposed plea allocutions not for impeachment purposes but rather to demonstrate "the Government's apparent efforts to influence the relevant plea allocutions." *United States v. Ahuja*, 18 CR 328 (KPF), ECF No. 213. This is of course not the issue here. The defendant in no way seeks to impugn the conduct of the Government attorneys involved in Mr. Pietruszewski's allocution, but instead seeks to introduce this testimony simply to show that Mr. Pietruszewski at one point made statements that were inconsistent from his trial testimony, precisely as permitted by Rule 613. Judge Failla's Order, by contrast, makes no mention whatsoever of Rule 613 or impeachment with an inconsistent statement and thus should have no bearing on the instant matter.

### e. The Defendant Would be Prejudiced by the Preclusion of this Evidence

Finally, the defendant will be prejudiced if this evidence is excluded. The Government argues that exclusion would not prejudice the defendant as cross-examination is available using Mr. Pietruszewski's plea allocution, cooperation agreement, and emails sent to the defendant. Mot., at 5. However, these materials do not contain evidence of the prior statements Mr. Pietruszewski made regarding his plea negotiations with the Government which may be

Robert C. Gottlieb & Associates PLLC · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com

5

inconsistent with his testimony at trial. As the defendant has established his right to impeach Mr. Pietruszewski with any prior inconsistent statements, to deny the defendant that ability would not only be extremely prejudicial, it would serve no legitimate purpose, and would leave the jury believing that Mr. Pietruszewski had never made contradictory statements before, which is erroneous.

### 4. Conclusion

The Government fails to put forth any valid reason for precluding the defendant from using this evidence. Should the need to impeach Mr. Pietruszewski arise, as the requirements of Rule 613 have been met, the defendant should be allowed to use extrinsic evidence of Mr. Pietruszewski's prior inconsistent statements to do so.

The defendant should be permitted to cross-examine Mr. Pietruszewski about his attorney's statements made on his behalf as his agent. Additionally, either Mr. Pietruszewski's attorney or an AUSA, if called, should be compelled to testify as to the contents of emails exchanged relating the negotiations around Mr. Pietruszewski's plea allocution. Furthermore, excluding this evidence from trial would prejudice the defendant by denying him the opportunity to meaningfully confront the witnesses against him.

For the foregoing reasons, we respectfully request that the Court deny the Government's request in its entirety.

We sincerely thank this Court for its consideration.

Respectfully submitted,

ROBERT C. GOTTLIEB
& ASSOCIATES PLLC

Robert C. Gottlieb, Esq.

Enc.

Cc: Nicolas Roos, Esq.
    Alexandra Rothman, Esq.
    Thomas Burnett, Esq.
    Assistant United States Attorneys (via ECF)

Robert C. Gottlieb & Associates PLLC · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com

6