

Robert C. Gottlieb & Associates PLLC
Trinity Building
111 Broadway, Suite 701
New York, NY 10006
Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com
New York · Rome

January 16, 2022

**Via ECF**
The Honorable Judge George Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

RE:    *United States v. Laurence Doud III*, 19 Cr. 285 (GBD)

**Opposition to the Government's Offer of Proof Regarding Barbara Castro and Michael Paulsen**

Dear Judge Daniels:

As you know, this law firm represents Laurence Doud in the above-referenced criminal matter. We write to respectfully request that Your Honor preclude the testimony of Barbara Castro and Michael Paulsen from trial because the Government's Offer of Proof **does not establish the required connection between the testimony and RDC** in the way that the Court expressly indicated would be required. Additionally, the testimony is **irrelevant** and **unfairly prejudicial** to the instant case.

As discussed more fully below, this evidence should be excluded for the following reasons:

Barbara Castro
- **Irrelevance**: The Government's evidence simply does not establish the connection between Ms. Castro and RDC that Your Honor deemed would be necessary to admit her testimony. Further, the Government states that they plan to introduce significant evidence about Ms. Castro **and other addicts**, none of whom have any possible relevance to this case. That is far beyond the scope of the indictment.
- **Unfair prejudice**: Ms. Castro is a tragic figure whose struggles with addiction began long before the time period covered by the indictment in this case. She is being offered as a witness only to inflame the emotions of the jury against the defendant.

Michael Paulsen
- **Irrelevance**: The Government plans to offer testimony that Mr. Paulsen was diverting drugs while at Regal Remedies, but can offer no evidence that RDC knew or should have known that Mr. Paulsen was the one diverting the drugs. Furthermore, the Government's

Offer of Proof contains no evidence supporting the allegation that RDC was the sole supplier of controlled substances to Regal Remedies.

- **Unfair Prejudice**: The admission of this testimony will unfairly cause the jury to associate Mr. Doud with Mr. Paulsen's unrelated criminal activity and mislead the jury as to what RDC employees were aware of during the time period covered by the indictment.

## 1.  Barbara Castro

### a.  *Ms. Castro's Testimony is Not Relevant to this Case*

The Government must prove, beyond a reasonable doubt, that Mr. Doud and others conspired to distribute narcotics in an unlawful manner and defraud the government. *See* Superseding Indictment, ECF No. 92. There is no indication, and indeed it would be preposterous to argue, that the purported conspiracy included Ms. Castro, Dr. Anderson, or anyone related to Old Town Pharmacy. The Government argues that Ms. Castro's testimony will prove the existence of diversion, but the Government's offer of proof does not come close to establishing the connection between RDC and the drugs taken by Ms. Castro that Your Honor deemed necessary. The Government alleges both that RDC was the exclusive supplier of Oxycodone to Old Town Pharmacy beginning in 2015, and that Old Town Pharmacy was a criminal enterprise, exploiting vulnerable people like Ms. Castro for profit. Why, if the pharmacy was such a blatantly criminal operation should the Court trust their recordkeeping which purports to show that RDC was the sole provider of Oxycodone? **Relying on the "records" kept by a business interested in exchanging pills for cash regardless of the needs of the recipient is a dubious way to prove that the pills taken by Ms. Castro came from RDC.** Testimony about Ms. Castro's struggles with addiction, and the way in which she obtained potentially illicit drugs has absolutely no bearing on the elements the Government must prove in this case.

If the Court is nonetheless swayed by Old Town Pharmacy's own evidence about its suppliers, it is still entirely clear that any testimony from Ms. Castro about filling prescriptions prior to October 2015, when the Government alleges that RDC became the sole Oxycodone supplier to Old Town Pharmacy, should not be permitted. Such testimony would be contrary to the substantial concerns raised by Your Honor during jury selection on January 12, 2022. Jan. 12, 2022 Tr. at 120. Clearly if, as the Government argues, RDC was Old Town Pharmacy's sole Oxycodone supplier after October 2015, it was *not* the only Oxycodone supplier prior to that date. The Government also does not attempt to allege that RDC was the sole supplier of any other pharmacies Ms. Castro used during the relevant time. Thus, it would be impossible for the Court to know whether any pills received by Ms. Castro at any pharmacy prior to October 2015 came from RDC. To allow testimony about any opioids obtained during this time period would be akin to calling the victim of an unrelated robbery to testify at the trial of an alleged bank robber, just as Your Honor raised. Jan. 12, 2022 Tr. at 121.

To support the introduction of Ms. Castro's testimony, the Government selectively cites an inapposite First Circuit opinion in an effort to mislead the Court. The conspiracy at issue in *United States v. Simon* was not one between employees of a drug distributor. Rather, that case dealt with a drug manufacturer who was conspiring with prescribing doctors and paying them unlawful kickbacks to overprescribe the company's proprietary fentanyl product in order to drive revenue.

Robert C. Gottlieb & Associates PLLC · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com

*United States v. Simon*, 12 F. 4th 1, 25–29 (1st Cir. 2021). The doctors were thus coconspirators in the case and the patients' testimony was relevant to establish the doctors' participation in the conspiracy. *Id.*, at 38–41. Furthermore, every patient called testified that the manufacturer had materially misrepresented information to their doctor in order to induce the doctor to prescribe the fentanyl product. *Id.* This evidence was clearly offered for a different purpose in a very different case than Ms. Castro's testimony would be offered here. There is no allegation here that Dr. Anderson or the pharmacist at Old Town Pharmacy are members of the purported conspiracy. There is similarly no allegation in this case that RDC paid kickbacks, influenced, or even in any way communicated with Dr. Anderson. Therefore, *Simon* has no bearing on the admissibility of Ms. Castro's testimony in this case. **It is also important to note that while the *Simon* Court allowed patient testimony, it took care to prohibit "evidence concerning the social consequences to the patient . . . of addiction," allowing the evidence "primarily to prove [the drug manufacturer's] fraud."** *Id.*, at 38.

Finally, the Government's offer of proof indicates their intention to elicit testimony from Ms. Castro on a number of topics that are even less relevant than her own drug use. The Government states that Ms. Castro will testify that Dr. Anderson's practice displayed signs of diversion. Putting aside the issue of whether a "noisy waiting room" is evidence of anything, whether or to what degree Dr. Anderson was involved in illegal activity is even more attenuated from the actions of Mr. Doud and RDC than the practices of Old Town Pharmacy. Even if Dr. Anderson's medical practice consisted solely of providing phony Oxycodone prescriptions, there is grossly insufficient evidence that connects him to RDC. The Government offers no evidence that Dr. Anderson' other patients exchanged their sham prescriptions for RDC pills. Indeed, the only evidence of connection the Government will offer is that Ms. Castro would "see the same people she saw at Dr. Anderson's office" at Old Town Pharmacy. While at the pharmacy Ms. Castro was, by her own admission, either high on drugs or suffering withdrawal symptoms. Relying on her ability to recall such information while in that condition would be inappropriate. Further, even if they were the same people, did she see them before or after RDC allegedly became the sole supplier of Oxycodone to Old Town Pharmacy? Were they even filling prescriptions for Oxycodone or other opioids? In short, there is entirely too much that we do not know for this evidence to possibly be probative of anything related to RDC or Mr. Doud. The Government also states that Ms. Castro's knowledge of individuals who have died from opioid addiction will not be the "principal focus of her testimony." The only inference possible from this phrasing is that such testimony will be some of Ms. Castro's testimony. Testimony about other addicts has absolutely no relevance to the instant matter, is profoundly prejudicial (discussed below), and raises the potential of inadmissible hearsay. Thus, it must not be allowed by the Court.

*b. Even if the Testimony were Relevant, it is Unfairly Prejudicial*

The Government twists itself into knots to find a basis for the relevance of this evidence, but their real purpose in its introduction is clear— to present the jury with a woman who has lived a tragic life marred by addiction in order to inflame the jury's emotions against Mr. Doud. Thus, even if the Court determines that any portion of Ms. Castro's potential testimony is relevant, it still cannot be allowed as its relevance is substantially outweighed by unfair prejudice. *See* FED. R. EVID. 403.

Robert C. Gottlieb & Associates PLLC · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com

Ms. Castro's struggles with drug addiction began in 1998 when she was prescribed Vicodin to treat pain caused by cysts. Ms. Castro subsequently became addicted to pain medication which she abused until 2003, when she got clean for a period of three years. In 2006 Ms. Castro relapsed and began using opioids again. Ms. Castro would primarily use OxyContin but would also use heroin when OxyContin was unavailable. Ms. Castro will undoubtedly testify about the horrors of drug abuse and her experiences as an addict during a period that began long before the beginning of the indictment period and continued after its conclusion. Ms. Castro has experienced the death of two close friends and a nephew due to addiction, and was near death herself, losing 130 pounds in 13 months as a result of her drug use. While such human tragedies would tug at the heartstrings of any jury, these topics are particularly highly charged as opioid use and addiction are increasingly hot-button issues in our society. To allow the Government to present such charged testimony would absolutely inflame the jury against Mr. Doud in a manner that is extremely unfairly prejudicial.

While the Defendant is aware that the topic of opioid use cannot be entirely avoided in a trial concerning this subject matter, the key aspect of Rule 403 is that it requires a balancing test between relevance and prejudice. Therefore, while the admission of some prejudicial evidence which is highly probative may be inevitable, similarly prejudicial evidence of less probative value should be excluded. As discussed at length above, the relevance of Ms. Castro's testimony, if any, is minor. The prejudicial nature of the evidence however, is severe. The Government therefore should not be allowed to play upon the emotions of the jury and inflame them against Mr. Doud for such a minor production of evidentiary relevance.

**2. Michael Paulsen**

*a. Mr. Paulsen's Testimony is Not Relevant to this Case*

The Government alleges that Mr. Paulsen's testimony will show that diversion was occurring at a pharmacy that did business with RDC. What the Government does not indicate that they will present, because it does not exist, is evidence that RDC had any indication that any potential diversion was being perpetrated by Mr. Paulsen. The Government will offer only testimony that some RDC employees saw some signs that may have indicated diversion. Importantly, Mr. Paulsen was the owner, not pharmacist, of Regal Remedies which maintained a full-time pharmacist on staff, Robert Pilchek, for the duration of the time period covered by the indictment. There is no evidence that RDC knew or should have known that any potential diversion at Regal Remedies was being carried out by Mr. Paulsen as opposed to Mr. Pilchek or any other employee of Regal Remedies. The Government's burden in this case, as discussed above, is to prove that there existed a criminal conspiracy within RDC to which Mr. Doud was a party. While evidence that RDC employees were aware that diversion was occurring at customer pharmacies could be evidence of a conspiracy, that is not what this evidence shows, and indeed the Government has not offered any proof that any RDC employees had any reason to suspect Mr. Paulsen was engaged in diversion. Thus, Mr. Paulsen's testimony is not relevant to proving the existence of a conspiracy within RDC.

The Government's Offer of Proof states simply that RDC "was Regal Remedies exclusive supplier of controlled substances . . . through 2017," but does not state how the Government intends

Robert C. Gottlieb & Associates PLLC · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com

to prove this fact. Similar to the argument raised above with regard to Old Town Pharmacy, we would urge the Court to be wary of taking the records of a criminal enterprise run by a serial fraudster at their face value. In order to prove that RDC supplied the drugs that Mr. Paulsen diverted, the Government must offer some evidence beyond the word of Mr. Paulsen himself that the RDC was the exclusive supplier of drugs to Regal Remedies. Otherwise, we cannot possibly know whether the drugs Mr. Paulsen diverted were RDC drugs.

### b. Even if the Testimony were Relevant, it is Unfairly Prejudicial

Presenting the testimony of a convicted felon who contributed to the struggles with addiction of many New Yorkers will unfairly associate Mr. Doud with such behavior in the mind of the jury, even though the Government can put forth absolutely no evidence connecting Mr. Paulsen with Mr. Doud. Mr. Paulsen may have been utilizing RDC product to commit his crimes, but there is no indication that Mr. Doud or anyone at RDC had knowledge of his actions. Presenting Mr. Paulsen's testimony is thus sure to associate him with Mr. Doud in the minds of the jury and for the jury to unfairly impute his independent criminal conduct onto Mr. Doud.

Furthermore, presenting Mr. Paulsen's testimony without any evidence that RDC employees were aware of his conduct, although they may have seen some signs of diversion, would mislead the jury into thinking that RDC knew that Mr. Paulsen was diverting drugs and approved of such behavior either tacitly or otherwise. This is absolutely not the case, and the Government will be unable to prove otherwise. For the above reasons, Mr. Paulsen's testimony would be unfairly prejudicial to Mr. Doud and therefore should not be allowed.

### 3. Relevant Time Frame

To the extent that Your Honor concludes that either witness' testimony should be admitted, it should be restricted in scope to the time frame covered by the indictment, namely January 1, 2012 through March 31, 2017. Any information about Ms. Castro using drugs or Mr. Paulsen engaging in criminal activity prior to or after that time period could not possibly have any relevance on the issues of whether a criminal conspiracy existed at RDC during the time charged by the indictment. Even within the indictment period the Court must be careful to restrict the witnesses' testimony to time periods where the Government can show a direct connection between the conduct testified to and RDC. For instance, should the Court find that RDC became the sole supplier of Oxycodone to Old Town Pharmacy in October 2015, Ms. Castro should not be permitted to testify to any prescriptions filled prior to that date, as there is no way to know whether those prescriptions were filled with RDC drugs. Likewise, Mr. Paulsen should not be allowed to testify as to anything that occurred prior to his pharmacy's doing business with RDC, and should not be permitted to testify as to any action taken by RDC after Mr. Doud had left the company. Any other testimony can have no bearing on the ultimate question of whether a criminal conspiracy existed within RDC during the time period covered by the indictment.

Such evidence would also be unfairly prejudicial as it would give the jury more inflammatory testimony to connect with the defendant, notwithstanding the fact that it could not have been due to the defendants' conduct because it has nothing to do with Mr. Doud and/or was outside the time period that the alleged conspiracy was ongoing. Therefore, while we strongly believe that neither

Robert C. Gottlieb & Associates PLLC · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com

Ms. Castro nor Mr. Paulsen should be allowed to testify at all, if their testimony is permitted it should be limited to the time periods which are covered by the indictment and where the Government can show a clear connection to RDC drugs.

## 4.  Conclusion

For all of the reasons discussed above, the testimony of Barbara Castro and Michael Paulsen is both irrelevant to this case and highly prejudicial.  We therefore respectfully request that Your Honor preclude these witnesses from testifying at trial.   If Your Honor should allow their testimony, it must be restricted to conduct by the witnesses that the Government is able to show is directly related to RDC, and certainly should not encompass any activity outside of the indictment period.

We sincerely thank this Court for its consideration.

Respectfully submitted,

ROBERT C. GOTTLIEB
& ASSOCIATES PLLC

By: _____
        Robert C. Gottlieb, Esq.

Enc.

Cc:    Nicolas Roos, Esq.
        Alexandra Rothman, Esq.
        Thomas Burnett, Esq.
        Assistant United States Attorneys (via ECF)

Robert C. Gottlieb & Associates PLLC · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com