M213DOUF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        19 Cr. 285 (GBD)

5   LAURENCE F. DOUD III,

6              Defendant.
                                         Trial
7   ------------------------------x

8                                        New York, N.Y.
                                         February 1, 2022
9                                        10:00 a.m.

10  Before:

11
                      HON. GEORGE B. DANIELS,
12
                                         District Judge
13                                       -and a Jury-

14                      APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  NICOLAS T. ROOS
17       ALEXANDRA ROTHMAN
         THOMAS S. BURNETT
18       Assistant United States Attorneys

19  ROBERT C. GOTTLIEB
    DERRELLE M. JANEY
20  PAUL R. TOWNSEND
         Attorneys for Defendant

21
    Also Present:  Sunny Drescher
22                 Jacqueline Hauck
                   Paralegal Specialists
23                 Special Agent George Burdzy, DEA
                   Investigator Kathleen Whitmore, DEA
24

25

M213DOUF

1          (Trial resumed; jury not present)

2          THE COURT:  Good morning.  Are we waiting on the rest

3    of your team?

4          MR. ROOS:  She's just in the elevator.

5          THE COURT:  There may be one issue before we proceed.

6    Mr. Enquist, Juror No. 14, what would be Alternate No. 2,

7    called last night and said his two kids tested positive for

8    COVID.  He has tested, he tested negative last night, and he

9    tested negative this morning.  But, as of last night he

10   quarantined himself in a hotel, and I told him that he should

11   simply await further instructions from me.

12         My intention is to go ahead and proceed without him

13   and excuse him, particularly since he's only the second

14   alternate out of the four alternates that we anticipate, if

15   everyone shows up today, we'll excuse those last three or four

16   jurors.  Okay?

17         So, anyone have any other suggestion?

18         MR. GOTTLIEB:  No, your Honor.

19         THE COURT:  So, as soon as we have all of our 15

20   jurors, we will continue.

21         MR. ROOS:  He didn't come in today?

22         THE COURT:  He didn't come in.  He is in a hotel

23   quarantined for now.  As I said, he's tested negative last

24   night and this morning.  But out of caution, he's quarantining.

25         All our jurors are here.  We're bringing them up.

1              Let's bring the jury in.

2              (Jury present)

3              THE COURT:  Ladies and gentlemen, as I'm sure you

4    noticed, Mr. Enquist is not with us today.  Unfortunately, his

5    two children tested positive for COVID yesterday.  He has

6    tested negative.  He tested negative last night, and he tested

7    negative this morning, so, but he has out of an abundance of

8    caution quarantined himself at a hotel while his kids are

9    being, their illness is being dealt with.

10             So, since we need 12 jurors to deliberate, we are

11   going to proceed without him.  I'm going to excuse him from any

12   further jury service, and we will proceed as we anticipated

13   that we were going to proceed.

14             So we'll now have the government's rebuttal and then

15   I'll instruct you on the law, and hopefully by lunch time

16   you'll be in the jury room to begin your deliberations.

17             Ms. Rothman.

18             MS. ROTHMAN:  Thank you, your Honor.

19             Good morning.  We're almost done.  This is the

20   beginning of the end.  I'm going to speak for a bit, Judge

21   Daniels will instruct you on the law, and then you'll begin

22   your deliberations.

23             I want to start with two promises.  First, I'm not

24   going to be as long as Mr. Roos or Mr. Gottlieb were yesterday.

25   I promise you that.  And second, I'm not going to respond to

M213DOUF                    Rebuttal - Ms. Rothman

everything that Mr. Gottlieb said when he spoke to you.  He

made a whole lot of arguments, and you know a lot of them just

don't make sense.  You know that.  You sat through this trial,

you listened to the witnesses, you looked at the documents.

You know what Mr. Gottlieb told you just doesn't add up.

What we're going to do this morning together is talk

about some of that evidence.  Now, as you know, the government

bears the burden in this case.  The defendant has no burden,

the government has the burden and we embrace that burden.  But

when the defendant, when his attorneys make arguments, you

should scrutinize those arguments.  You should ask yourself,

why is Mr. Gottlieb telling me this?  What is he leaving out?

And I think what you'll see is most of what you heard yesterday

was a distraction.

As I listened to Mr. Gottlieb yesterday, and I

listened carefully to hear what he was trying to say, what he

didn't address, what he had no answers to, I was struck by the

fact that Mr. Gottlieb conceded, conceded that RDC's customers

were bad.  Bad pharmacies, that filled prescriptions written by

bad doctors.  No one is disputing that RDC's customers were

diverting controlled substances.  ProHealth, Linden Care,

Aliton's, Bay Ridge, Regal Remedies, Old Town, Mr. Roos walked

you through those pharmacy examples, and it was conceded in the

defense summation.

What else?  Mr. Gottlieb also conceded that the

M213DOUF                   Rebuttal - Ms. Rothman

1    employees in RDC's compliance department intentionally shipped

2    drugs to those pharmacies, and others, knowing they were being

3    diverted.  The defense summation did not argue otherwise, so

4    that's not in dispute.

5          Instead, Mr. Gottlieb is trying to convince you that

6    the defendant had nothing to do with this.  The defendant's

7    actions were not a crime.  That's really what he said.

8          Mr. Gottlieb is asking you to believe that the

9    defendant had no idea what was going on, despite the fact that

10   two of his employees, one who pled guilty to conspiring with

11   the defendant to commit these crimes, came into court, sat on

12   that witness stand, under oath, and told you the defendant

13   knew, told you the defendant knew everything, told you they

14   broke the law at the defendant's direction.

15         Mr. Gottlieb's tried to tell you the defendant was

16   blind to all of that.  That's the story you have to buy.

17         But ladies and gentlemen, the defendant was the CEO,

18   the big boss.  And he wasn't one those CEOs that sat in his

19   office all day.  No.  He walked the floor.  He walked the

20   warehouse.  He knew everyone's name.  He spoke to customers, he

21   knew about customers' orders.  You think he never made it to

22   the compliance department?  Of course he did.  You think he

23   took a hands off approach on how RDC shipped its controls?

24   Products that made him half a million dollars, put it in his

25   pocket?  Of course he didn't.

1        Mr. Gottlieb wants to blame everybody else.  The DEA,

2   the pharmacists, the doctors, the manufacturers.  Even the

3   government.  The prosecutors at this table.  He wants to claim

4   the defendant is the scapegoat for the opioid epidemic.

5        But ladies and gentlemen, this case isn't about any of

6   that.  There will be other trials for doctors, for pharmacists,

7   for manufacturers.  Today, it's about one person.  The

8   defendant.  It is about what he did.  His choices, his crimes,

9   his actions.

10        So let me start by responding to a few things

11   Mr. Gottlieb said or showed you that are simply not true,

12   designed instead to distract you or confuse you.

13        Mr. Gottlieb told you that Bill Pietruszewski had

14   authority and power in the compliance department.  And he

15   showed you four e-mails, A54, A62, A68, B8.  But here's the

16   thing.  None of those e-mails say anything about

17   Pietruszewski's power in the compliance department.  A54 is

18   about Specialty Care Pharmacy, a pharmacy the defendant turned

19   back on.  A62 is about Waschko's, a pharmacy that gets raided

20   by the DEA.

21        Ms. Hauck, can you please pull up Defense Exhibit A62.

22   Let's look at the bottom part of that e-mail.

23        So look at this document.  The DEA's putting computers

24   and files in clear bags.  And what does Pietruszewski do?  He

25   asks, I am not sure do.  We want to place them on do not sell?

1    Is that someone who has power and authority?  He's being told

2    the DEA raided this pharmacy, and he's asking what to do.

3            We can take that down.

4            A68.  That's about Plainfield.  You heard a lot about

5    Plainfield.  Here's the short story.  The DEA investigates

6    Plainfield, tells RDC about it, and they shut them off.  Says

7    nothing about Pietruszewski's power.

8            And B8, that's about Casey's Prescription Pad.  Again,

9    that's a pharmacy the defendant turned back on.

10           So these e-mails, the ones you were quoted by

11   Mr. Gottlieb, say nothing about Pietruszewski's power in the

12   compliance department.

13           But you know what does?  Something that Mr. Gottlieb

14   didn't mention to you once during his closing arguments

15   yesterday?  It's that March 2015 sales meeting.  You remember

16   that meeting.  January 2015, a new policy comes out,

17   Pietruszewski introduces it to the salespeople.  And what

18   happens?  That man, the defendant, scolds him.  Yells at him.

19   That's what happened.  Mr. Gottlieb has no response to that

20   meeting.

21           So you want to know who was running the compliance

22   department?  Who had the power?  It's the defendant.  Not

23   Pietruszewski.

24           Something else Mr. Gottlieb said yesterday that's also

25   simply not true.  He said there is no evidence before you as to

 1    what happened in 2017 with the pharmacies that RDC cut off.
 2    Really?  No evidence?  Let's pull up the transcript, page
 3    468-469.  I am going to read what Ms. Pompeo said.
 4    "Q.  What, if anything, changed in the compliance department's
 5    practice in the year after Doud left the company?
 6    "A.  We immediately started to analyze dispensing reports again
 7    before turning customers on for controlled substances.  We
 8    started reporting suspicious customers and suspicious orders.
 9    We started ensuring that we were collecting dispensing reports
10    and analyzing them on existing customers as well."
11             Let's go to the next page.  Line 1.
12    "Q.  Why did that change?
13    "A.  Because it was required of us to do so, and we could now
14    do it freely."
15             Let's go to the bottom of line 9.
16    "Q.  What do you mean you could now do it freely?
17    "A.  We didn't -- well, with Larry not being there, we didn't
18    have to not analyze dispensing anymore before turning an
19    account on.  Because management had changed and their
20    authorization changed, we didn't have to get approval to take
21    action on pharmacies anymore."
22             So what changed?  The defendant was gone.
23             We can take that down.
24             Another distraction you heard is that the DEA is to
25    blame.  Mr. Gottlieb talked about that DEA conference that

1    didn't get rescheduled, that didn't happen.  He's asking you to

2    believe that if that conference had happened, Doud and the

3    compliance department wouldn't have been confused and would

4    have done what they were supposed to do, should have done.

5    This argument makes no sense for a bunch of reasons.  Let me

6    just give you two.

7         First, ask yourself who didn't you hear those

8    complaints from about being confused and not knowing what to

9    do?  Pietruszewski and Pompeo, the folks who were doing the

10   defendant's dirty work every day in the compliance department.

11   They knew their obligations.  They knew what they were supposed

12   to be doing.  They didn't need a paint by numbers guide from

13   the DEA, and neither did the defendant.  All they needed was a

14   CEO who wanted to follow the rules.

15        And second, immediately after Doud left the company,

16   RDC started filing suspicious order reports, hundreds of them,

17   to be precise.  Let's pull up Government Exhibit 903, at page

18   16.

19        This chart doesn't show confusion.  It doesn't show

20   people not knowing what they're supposed to be doing.  It

21   shows, when the defendant leaves, they start following the law.

22   It's that simple.

23        We can take that down.

24        Now, what was another distraction you heard yesterday?

25   Well, Mr. Gottlieb rattled off a list of people you didn't hear

M213DOUF                    Rebuttal - Ms. Rothman

1    from at this trial.  Joe Brennan, Amy Skibickyi, Liz Cullen,

2    Julius Morton.  Let me just say two things.  First, as I expect

3    Judge Daniels will instruct you, each party had an equal

4    opportunity or lack of opportunity to call any witness.  And of

5    course the defendant has no burden, but let's be clear, did you

6    want to be here any longer?  Did you want to see more exhibits?

7    More bad pharmacy charts?  More charts?  More documents about

8    the defendant's bonus?  You have seen sufficient evidence to

9    return a verdict of guilty.

10          What about the lawyers?  Well, maybe that's the

11   biggest distraction you heard yesterday.  Here's the argument.

12   The defendant paid $30,000 for lawyers, so he can't be guilty.

13   If it were that easy to get away with crimes, think about all

14   the things people could do. Just put a lawyer on payroll.  And

15   let's be clear, the defendant didn't even do that.  It was a

16   few months, $30,000, and it was the company's money, not the

17   defendant's.

18          But here's more to the point, what you really need to

19   think about.  That $30,000 was a drop in the bucket compared to

20   all the money the defendant was making by selling controlled

21   substances.

22          Let's look at Government Exhibit 913, slide eight.

23   That's ProHealth, a pharmacy you heard a lot about during this

24   trial.  About $6 million RDC made from this pharmacy alone.  So

25   just do the math.  The numbers speak for themselves.

1          Ladies and gentlemen, this is only one pharmacy.  You

2     heard from Professor Cutler, RDC made about $800 million in

3     controlled substances sales and the defendant made more than a

4     half million dollars in his bonus.  It's that simple.

5          You can take that down.

6          Here's one other thing.  The defendant didn't follow

7     the advice his lawyers gave him.  Not only with Pro Compliance

8     or beefing up the compliance department.  But remember, the

9     lawyers said don't turn on new accounts before you analyze

10    dispensing.  And what did the defendant do?  He did it anyway.

11    So lawyers, that's another distraction.

12         So, now I want to get into the substance of what you

13    heard yesterday from Mr. Gottlieb.  Mr. Gottlieb spent a lot of

14    time talking about what he called criminal intent.  He told

15    you, if the defendant, Pompeo, Pietruszewski, didn't want

16    diversion to happen, then there's no conspiracy.  That's wrong.

17    Plain and simple.  I don't expect what Mr. Gottlieb told you to

18    be anywhere in Judge Daniels' instructions, and you should

19    listen to Judge Daniels on what the law is.

20         I expect Judge Daniels to ask this basic question:

21    Did the defendant participate in a conspiracy knowing its

22    unlawful purpose and with the specific intent of furthering its

23    objectives?  That's what it means to be in a conspiracy.  To

24    know you and other people are doing something unlawful, and to

25    act intentionally to bring it about.

1      There are two parts to that question.  Knowledge of

2  the unlawful purpose, and specific intention of furthering its

3  objective.  So let's take them one by one.

4      I expect Judge Daniels will tell you that knowledge

5  just means acting not by mistake or by accident.  So here's the

6  question.  Did Doud know that RDC was illegally distributing

7  controlled substances?  And the answer is yes.  There are two

8  ways to get there.  First, he had direct knowledge.

9  Pietruszewski, Pompeo and others told him about bad pharmacies

10  that RDC was supplying, and at Doud's direction RDC kept

11  shipping them pills.  That's knowledge, plain and simple.

12  Second, even if Doud didn't have actual knowledge, he

13  consciously avoided learning about the diversion happening at

14  the pharmacies.  That just means he put his head in the sand.

15  He ignored the red flags.  And ladies and gentlemen, RDC

16  literally has things called red flags in their policies.

17      Let's pull up Government Exhibit 276 at page seven.

18  Section D.  Red flags.  Black and white.  He saw the red flags

19  and he ignored them.  He knew about them, he consciously

20  avoided knowing them, so that makes him also guilty.

21  Knowledge.

22      The question here is are they selling drugs illegally?

23  And you know they are, because you heard the evidence of

24  diversion.

25      We can take that down, Ms. Hauck.  Thank you.

M213DOUF                    Rebuttal - Ms. Rothman

1        You also heard they weren't maintaining effective

2   controls against diversion.  Distributors have an obligation to

3   maintain effective controls against diversion.  Companies can

4   only sell these dangerous pills if they maintain these

5   controls.  And you heard at the defendant's direction, they

6   intentionally set aside effective controls against diversion

7   for certain customers.  That's knowledge.

8        Let's focus on the second part of that question.  Did

9   the defendant have the specific intention of furthering the

10   conspiracy's objectives?  I expect Judge Daniels will tell you

11   intentionally just means deliberately.  Did the defendant act

12   deliberately in furthering the object of the conspiracy to

13   illegally distribute controlled substances?  Of course he did.

14   How do you know that?  Because he intentionally told

15   Pietruszewski and Pompeo to keep shipping these controls to bad

16   pharmacies, knowing the pills were being sold illegally.

17        Now, compare that to what Mr. Gottlieb told you

18   yesterday.  What he wants you to think is that as long as the

19   defendant didn't want drugs to be diverted, so long as he had

20   some other reason for breaking the law, like making money, or

21   keeping customers happy, then he can't be guilty.  And I don't

22   expect that's what Judge Daniels will tell you, and it doesn't

23   really make much sense.

24        Think about it for a minute.  Does it make sense that

25   the defendant could know his employees were selling drugs

M213DOUF                    Rebuttal - Ms. Rothman

1    illegally, deliberately help them to do it by directing their

2    actions, but not get in trouble because his main goal was to

3    make money?  Of course not.

4            Think about this.  Remember Mr. Gottlieb went on and

5    on about how bad of a person Michael Paulsen was.  Let's be

6    clear.  Paulsen is a bad person.  He committed serious crimes,

7    he pled guilty to those crimes, he is going to prison for those

8    crimes.  Remember what Paulsen said when he testified.  Let's

9    look at page 1441, line 23 of the transcript.

10   "Q.  When you opened Regal Remedies, did you intend to divert

11   controlled substances?

12   "A.  No, I did not."

13           Let's go to 1442.

14   "Q.  Did you divert controlled substances there?

15   "A.  Yes, I did."

16           So Paulsen didn't intend to divert them either, but he

17   did.  Is Mr. Gottlieb saying that Paulsen's not guilty of his

18   crimes?  Of course not.  That's because you know focusing on

19   want or intent, the way framed by Mr. Gottlieb, just doesn't

20   make sense.  Under Mr. Gottlieb's theory, Paulsen must be

21   innocent.  But your common sense tells you if having a business

22   justification for a reason were enough, it would be easy to get

23   away with lots of crimes.

24           So let me give you an example, and we can take this

25   down.  Imagine someone works as a partner at a large marketing

1    company.  Company's trying to get a new client, but there is

2    another company that also wants to get the new client, and they

3    both have pitch meetings on the exact same day, one after the

4    other.  The company really wants the business.  So the partner

5    decides to kidnap the other company's associate who is making

6    the presentation, just for a few hours so he can't do the pitch

7    meeting.  Now, they give him food, they give him water, he can

8    watch some TV, but ladies and gentlemen, he is kidnapped, he

9    can't leave.  The reason the partner did this is to get the new

10   client.  It is a business reason.  But, does that make it

11   right?  Would anyone say the partner didn't kidnap that

12   associate?  Of course not.  Of course not.  The partner acted

13   with the unlawful purpose and the specific intent of furthering

14   it objective.  The business justification, no matter how nice

15   it sounds, is no excuse.

16        So let's go back to the transcript.  The testimony

17   that's in the record.  Let's pull up page 476, lines 10 to 15.

18   Mr. Gottlieb showed you this.  It is during Ms. Pompeo's

19   cross-examination.

20   "Q.  While you were at RDC, did you intend to divert controlled

21   substances?

22   "A.  No."

23        But that's the wrong question.  Let's look at the

24   redirect.  Page 612:20.  Thank you.

25   "Q.  Did RDC ship orders of controlled substances to pharmacies

M213DOUF                    Rebuttal - Ms. Rothman

1    you believed were diverting during that period?

2    "A.  Yes.

3    "Q.  Did you know it was wrong?

4    "A.  Yes.

5    "Q.  Why did you do it?

6    "A.  Cause that's what -- I was following directions.

7    "Q.  Whose directions?

8    "A.  Ultimately Larry Doud's."

9            Knowledge, check.  Deliberate action, check.  And at

10   whose direction did she commit these crimes?  The defendant.

11   The defendant's guilty on Count One.

12           Let's look at Pietruszewski.  The exact same thing

13   happened.  Let's start with page 995 of the transcript.  This

14   is actually interesting.  Focusing on line 3.

15   "Q.  Is it fair to say that while you were working at RDC,

16   during the entire time that you told this jury about, can we

17   agree that you certainly didn't want to commit any crimes,

18   right?"

19           Look at what Pietruszewski says.

20   "A.  I did not want to commit any crimes, but I did."

21           Let's pause there for a moment.  So much for

22   cross-examination, bringing out the truth of witnesses.  You

23   heard Mr. Gottlieb say yesterday that Pietruszewski and others

24   were just rehearsed lines.  Well this line, "I did not want to,

25   but I did" is devastating for the defendant on

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M213DOUF                    Rebuttal - Ms. Rothman

1   cross-examination.

2        Let's keep going.  Page 996, line 1-5.

3   "Q.  You didn't fail to file suspicious reports because you

4   wanted or intended to have narcotics diverted by pharmacies,

5   correct?

6   "A.  I didn't want them to be, but they were diverted because

7   we let them go, yes."

8        Again, cross-examination.  Devastating for the

9   defendant.

10        Let's look at what happens on redirect.  Let's go to

11   page 1205 of the transcript, line 11.

12   "Q.  When you worked at RDC, did you ship orders of controlled

13   substances to pharmacies that you believed were diverting

14   controlled substances?

15   "A.  Yes.

16   "Q.  Did you know it was wrong?

17   "A.  Yes.

18   "Q.  Why did you do it?

19   "A.  That's what Larry wanted us to do."

20        Knowledge, check.  Deliberate action, check.  And at

21   whose direction?  The defendant.  You can take that down.

22        Let me say one more thing on intent.  I'm not going to

23   go back over all your e-mails you saw during Mr. Roos' closing

24   argument that showed the defendant's intent.  E-mails like

25   cardinal is in deep doo-doo, we need to stay low profile.

M213DOUF                    Rebuttal - Ms. Rothman

1    E-mails like the suspicious ordering system is a concern to me.

2    E-mails like I have no idea if this is a good guy or a bad guy,

3    but I do know that in this case it is taking too long.

4         Those are clear e-mails in the defendant's own words

5    in black and white of his intent.  The defendant's guilty on

6    Count One.

7         Let's talk for a quick moment about Count Two.  That's

8    defrauding the DEA.  If I understood Mr. Gottlieb's argument,

9    it's this.  The defendant never instructed his employees to lie

10   to the DEA.  He never told them to give the DEA RDC's written

11   policy.  This document, Government Exhibit 276, let's pull it

12   up, please, Ms. Hauck.  Thank you.

13        Really?  What else do you have a policy like this for,

14   if not to give to the DEA?  To put it on the wall?  To give it

15   at Christmas parties?  The whole point of this is you know the

16   DEA is going to ask for the policy, and so you give it to them.

17   And Pietruszewski told you it was important that they gave them

18   the right policy.  The defendant didn't care.  He knew.

19        But, let's be clear.  You don't even need this

20   policy -- we can take it down -- RDC had been telling the DEA

21   for years they were going to investigate suspicious orders and

22   report them to the DEA.  And there is no dispute they didn't do

23   that.  And why didn't they do at that?  Because the defendant

24   told them not to.  That's the lie.  He's guilty on Count Two.

25        So now I want to talk about Pietruszewski.

M213DOUF                    Rebuttal - Ms. Rothman

1    Mr. Gottlieb got up yesterday and called him a liar.  And he

2    has to say that, because if you believe Pietruszewski, the

3    defendant is guilty.  It's that simple.  Go back to the jury

4    room, check guilty on Count One and Count Two.  It's

5    devastating testimony for the defendant.

6           So of course, Mr. Gottlieb is going to stand up here

7    and tell you that he's lying.  But think about what

8    Mr. Gottlieb is really saying when he calls Pietruszewski a

9    liar.  He's saying that Pietruszewski is framing the defendant

10   to help himself.  That he's some criminal mastermind, that he

11   thought this whole thing up, and fabricated an entire scheme to

12   frame the defendant.

13          But then how do you explain all those e-mails in the

14   record from 2012, 2013, 2014, 2015, 2016, that show

15   Pietruszewski reporting to Doud?  That show Pietruszewski

16   checking with management to make decisions?  Did he go back in

17   time and create those e-mails?  Of course not.  You know that

18   makes no sense.

19          Ladies and gentlemen, you watched him testify in that

20   witness box for days.  You saw the way he answered questions.

21   Does he seem like a criminal mastermind?  Someone who concocted

22   a massive frame-up of the defendant?  Of course not.  He

23   couldn't go to a DEA conference without the defendant's

24   approval, let alone start a criminal conspiracy.  He's not

25   defrauding the DEA without the defendant's blessing.  Not

1   shipping controls to pharmacies unless the defendant wants him
2   to.  Everything Pietruszewski did at that company was at the
3   defendant's direction.  The e-mails you saw in Mr. Roos'
4   closing make that point clear.

5          And remember this.  The defendant is the one that put
6   Pietruszewski in the job.  No training, no education, no
7   experience, and he's running the compliance department.  Ask
8   yourself why that is.  Why would he do that?  Because
9   Pietruszewski could be pushed around.  He would do whatever the
10  defendant wanted, and that's what happened.

11         And to be clear, it's not just Pietruszewski.  If
12  there is a frame-up, everybody was involved in it too.  Pompeo,
13  Sam Alaimo, even Chris Masseth, who testified that he spoke at
14  the defendant's retirement party.

15         Just think this through.  Pompeo told you that the
16  decisions came from management, from the defendant.  But, if
17  she's just making this story up now, what about that 2016 voice
18  mail.  You remember that message she left for Pietruszewski?
19  How afraid she was that the defendant would think she wasn't
20  following his rules?  Makes no sense.

21         And Alaimo, he has to be in on it too, but he has
22  nothing to gain.  He was on and off the witness stand before
23  you even learned his name, ladies and gentlemen.  What did he
24  tell you?  On one occasion, Pompeo comes into his office,
25  crying.  He couldn't remember the date, couldn't even remember

1    the year.  If this is a frame-up, a whole big conspiracy to get

2    the defendant, think he would have thought of some date, made

3    the story a little more detailed?  He just told you what he

4    remembered.  Nothing more, nothing less.

5          And Masseth, he has to be part of it too, this massive

6    conspiracy.  Remember, he told you that not everyone at RDC

7    liked Linden Care.  He told you the defendant lied in that

8    e-mail about not knowing about Insys and the amount of Subsys

9    they were selling.  He was surprised.  He's also here to frame

10   the defendant?  Like I said, you watched him testify.  He

11   didn't want to be here.  He didn't want to be testifying

12   against his former boss, his mentor.  But he did, and he told

13   the truth.  So the idea of a frame-up simply makes no sense.

14         So, if there's no massive conspiracy by all these RDC

15   employees, then what is Mr. Gottlieb saying when he tells you

16   Pietruszewski lied?  He's saying that he did so at the

17   government's direction.  When he says that, what he's really

18   saying is that these prosecutors, the government, heard a

19   story, didn't like it, and got a witness to change his story --

20         MR. GOTTLIEB:  Your Honor, objection.

21         MS. ROTHMAN:  -- that they suborned perjury.

22         THE COURT:  I'm going to sustain the objection.  For

23   both of you, I think you crossed the line.  This is not about

24   the lawyers.  You are to decide this case solely on the

25   evidence or lack of evidence in this case.

1      Ms. Rothman.

2      MS. ROTHMAN:  Judge Daniels is right.  It's not about

3      the lawyers.  Not about the government.  Not about the people

4      at this table.  It's about one person in this courtroom and his

5      actions.  It's about the defendant, what he did.  That's the

6      question for you to decide.

7      Let me say one more thing about Pietruszewski.  You

8      heard about his agreement, the way it works.  If he lies on

9      that witness stand, the agreement gets ripped up.  No

10     sentencing letter from the government, and he goes to jail.

11     His incentives are to tell the truth.  And you know his

12     testimony was consistent with all the other evidence in this

13     case.  The e-mails, the documents, the compensation the

14     defendant got, it all lines up.

15     Now, I want to pause for a moment and talk about what

16     the defense strategy has been during this trial and in closing

17     arguments.

18     The strategy is this.  To zoom in on one moment in

19     time, an e-mail, a document, and say, look, the defendant cared

20     about compliance.  He agreed to shut off one pharmacy.  He

21     said, gee, thanks, Richie, I agree, too.  That's A28, a

22     document you were shown yesterday by the defense.  Or here, an

23     e-mail about Linden Care, A39, what the defense also showed

24     you.  And they've argued from that one moment in time that the

25     defendant didn't agree to break the law.  But it doesn't work

M213DOUF                    Rebuttal - Ms. Rothman

1     that way.

2             Let me give you an example.  Imagine you're looking at

3     a big mosaic, put together from hundreds of thousands of little

4     tiles.  You step right up to that mosaic, really, really up

5     close, and you look at one little tile.  You're not going to

6     see the full picture.  Maybe it's shiny, maybe it sparkles,

7     maybe it glitters.  But that's not the big picture.  You got to

8     step back, look at the full picture.  When you do that, that's

9     when the pieces come together, that's when you see what really

10    happened at the company under the defendant's watch.

11            You step back and you see the defendant didn't care

12    about compliance.  He cared about sales.  He cared about making

13    money.  And he decided to ship dangerous and addictive pills to

14    pharmacy customers to make money.

15            You want to see the full picture on Linden Care?  Ask

16    to see Government Exhibit 908.  You remember that chart.  It

17    skyrockets in the middle with all those sales.  What's the

18    story on Linden Care?  A little bit of looking in 2013, 2014,

19    and then nothing.  The company knows about bad doctors, the

20    company knows about cash, the defendant knows about those

21    problems.  And they keep shipping pills, keep shipping deadly

22    fentanyl.

23            Now, Mr. Gottlieb has tried his best, he is putting

24    the government's proof to a test and the defendant has had a

25    fair trial.  But he's not a magician.  He can't make the

M213DOUF                    Rebuttal - Ms. Rothman

1    evidence disappear.  Think about what he has no response to.

2    He has no response to the fact that RDC's sales of opiates

3    skyrocketed when the rest of the industry went down.  Let's

4    look at Government Exhibit 903, page seven.  You heard nothing

5    about this yesterday.  No explanation.  No explanation why all

6    these bad pharmacies are flocking to RDC, flocking to RDC when

7    sales across the industry are going down.  Think about that.

8         What else is there no explanation to?  Let's pull up

9    Government Exhibit 59.  Can we zoom in, please.  Thank you,

10   Ms. Hauck.

11        You know this e-mail.  We've talked about it before.

12   The DEA has fewer tools in its tool belt, so we're going to

13   start turning on accounts without doing due diligence and

14   shipping controls.  He didn't say the obligations were

15   different.  Doud didn't say the rules had changed.  He said

16   nothing except it's less likely I'm going to get caught so I

17   want to do this.  No response.  Mr. Gottlieb has nothing to say

18   in response to this e-mail.

19        You want to see inside Mr. Doud's head?  This e-mail,

20   among others, is clear proof of what he's thinking.  Clear

21   proof that he is guilty on both charges against him.

22        We can take that down.

23        I want to be clear about this.  You were told a lot

24   about businessman, business ideas and business decisions

25   yesterday.  Mr. Doud is not on trial for being a successful

1    businessman.  He's not on trial for business decisions.  He's

2    on trial because he supplied drug dealers like Michael Paulsen

3    and others with drugs and he lied to the DEA.

4             Selling opioids isn't like selling Tylenol or toilet

5    paper.  If he was selling that stuff and wanted to keep

6    shipping to customers, so have it.  The difference here is he's

7    selling deadly painkillers.  He has responsibilities, and he

8    ignored them.

9             One more point on this before I wrap up, ladies and

10   gentlemen.  Remember what Pietruszewski told you about why Doud

11   said we don't report our customers?  Transcript page 895, line

12   20-22.

13   "A.  Other customers wouldn't trust RDC and that, you know,

14   that they wouldn't want to order from RDC, because we were

15   turning customers in."

16            Could this sound any more criminal?  We are not going

17   to tell DEA about our bad customers, because our bad customers

18   don't want to be reported to the DEA.  It's here in black and

19   white the defendant's intent.  The defendant's direction as to

20   what was going to happen at the company.  We can take that

21   down.

22            This is not a business decision.  Keeping secrets from

23   the DEA, the law enforcement agency that is supposed to

24   regulate and enforce the federal dug laws, is not a business

25   decision.  Here's the thing though.  Eventually, even though

1   the defendant lied, the pharmacies got raided.  The doctors got

2   arrested.  The gig was up.  Everyone knew, and the defendant is

3   asking you to believe he had no idea.  He had nothing to do

4   with it.

5         I'm about to sit down.  But before I do, I want to say

6   three things.  First, you heard from Mr. Gottlieb about

7   reasonable doubt.  You also heard about Thomas Jefferson.  Let

8   me just say this.  Since Jefferson's days, that standard,

9   reasonable doubt, beyond a reasonable doubt, has applied in

10  every trial, every criminal trial.  And every day, since Thomas

11  Jefferson's days, juries, just like you, have reached verdicts.

12        Second, Mr. Gottlieb said the defendant's fate is in

13  your hands.  That's not right.  That's not fair.  Don't let him

14  put it on you.  The defendant is here because of what he did.

15  It's not your responsibility.  It's not your responsibility.

16  He's guilty because of what he did.  It's the evidence that

17  makes him guilty.  Not you.

18        And third, I want to take you back to where we started

19  two weeks ago.  We asked you to do three things.  To pay

20  attention to the evidence, and you've done that.  To follow

21  Judge Daniels' instructions on the law, and I trust that you

22  will do that.  And third, to use your common sense.  If you use

23  those your common sense, you will see through all of the

24  distractions, all the noise, all the finger pointing, and focus

25  on what this case has always been about.  About a CEO who put

1    sales over safety.  About a CEO who got rich while people got

2    addicted and harmed by dangerous pills.  About a CEO who had

3    his people do his dirty work, and now he wants you to believe

4    he had nothing to do with it.

5           Ladies and gentlemen, now is the time to hold the

6    defendant accountable for his actions.  Now is the time to find

7    the defendant, Larry Doud, guilty.

8           Thank you.

9           THE COURT:  Ladies and gentlemen, you are about to

10   enter your final duty, which is to decide the fact issues in

11   the case.

12          Before you do that, I will instruct you on the law.

13   You must pay close attention to me now.  I will go as slowly as

14   I can and be as clear as possible.

15          I told you at the very start of the trial that your

16   principal function during the taking of the testimony would be

17   to listen carefully and observe each witness who testified.  It

18   has been obvious to me and to counsel that you have faithfully

19   discharged this duty.  It is evident that you followed the

20   testimony with close attention.

21          I ask you to give me that same careful attention as I

22   instruct you on the law.

23          You have now heard all of the evidence in the case as

24   well as the final arguments of the lawyers for the parties.  My

25   duty at this point is to instruct you as to the law.  It is

1     your duty to accept these instructions of law and apply them to

2     the facts as you determine them, just as it has been my duty to

3     preside over the trial, and decide what testimony and evidence

4     is relevant under the law for your consideration.

5             On these legal matters, you must take the law as I

6     give it to you.  If any attorney has stated a legal principle

7     different from any that I state to you in my instructions, it

8     is my instructions that you must follow.

9             You should not single out any instruction as alone

10    stating the law, but you should consider my instructions as a

11    whole when you retire to deliberate in the jury room.

12            You should not, any of you, be concerned about the

13    wisdom of any rule that I state, regardless of any opinion that

14    you may have as to what the law may be or ought to be.  It

15    would violate your sworn duty as jurors to base a verdict upon

16    any other view of the law than that which I give to you.

17            Your final role is to pass upon and decide the fact

18    issues that are in the case.  You, the members of the jury, are

19    the sole and exclusive judges of the facts.  You pass upon the

20    weight of the evidence, you determine the credibility of the

21    witnesses, you resolve such conflicts as there may be in the

22    testimony, and you draw whatever reasonable inferences you

23    decide to draw from the facts as you have determined them.

24            I shall later discuss with you how to pass upon the

25    credibility or believability of the witnesses.

M213DOUF                    Charge

1          In determining the facts, you must rely upon your own

2     recollection of the evidence.  What the lawyers have said in

3     their opening statements, in their closing arguments, in their

4     objections or in their questions is not evidence.  In this

5     connection, you should bear in mind that a question put to a

6     witness is never evidence.  It is the answer which is the

7     evidence.  But you may not consider any answer that I directed

8     you to disregard or that I directed struck from the record.  Do

9     not consider such answers.  Nor is anything I may have said

10    during did the trial or may say during these instructions to be

11    taken in substitution for your own independent recollection.

12    What I say is not evidence.

13         The evidence before you consists of the answers given

14    by witnesses, the sworn testimony they gave as you recall it,

15    and the exhibits that were received in evidence, and the

16    stipulations of the parties.  A stipulation is an agreement

17    among the parties that a certain fact is true, or that if a

18    certain witness were called, he or she would give certain

19    testimony.  You should regard any agreed facts as true.

20         Since you are the sole and exclusive judges of the

21    facts, I do not mean to indicate any opinion as to the facts or

22    what your verdict should be.  The rulings I have made during

23    the trial are not any indication of my views of what your

24    decision should be as to whether or not the guilt of the

25    defendant has been proven beyond a reasonable doubt.

1              As to the facts, ladies and gentlemen, as I said, you

2     are the exclusive judges.  You are to perform the duty of

3     finding the facts without bias or prejudice as to any party.

4              Exhibits which have been marked for identification but

5     not received in evidence may not be considered by you as

6     evidence.  Only those exhibits received may be considered as

7     evidence.

8              Similarly, you are to disregard any testimony when I

9     have ordered it to be stricken.  As I indicated before, only

10    the witness's answers are evidence, and you are not to consider

11    a question as evidence.  Similarly, statements by counsel are

12    not evidence.

13             You should consider the evidence in light of your own

14    common sense and experience, and you may draw reasonable

15    inferences from the evidence.

16             Anything you may have seen or heard about this case

17    outside the courtroom is not evidence, and must be entirely

18    disregarded.

19             Let me again emphasize that a lawyer's question is not

20    evidence.  At times, a lawyer may have incorporated into a

21    question a statement which assumed certain facts to be true,

22    and asked the witnesses if the statement was true.  If the

23    witness denies the truth of a statement, and if there is no

24    evidence in the record proving that the assumed fact is true,

25    then you may not consider the fact to be true simply because it

1    was contained in the lawyer's question.

2          For example, if a witness was asked the question, "Is

3    your automobile red?"  You would not be permitted to consider

4    as true the assumed fact that the witness owns an automobile,

5    unless the witness indicates that he or she does, or unless

6    there is some other evidence in the record that the witness

7    owns an automobile.  In short, again, questions are not

8    evidence.  Answers are.

9          In determining the facts, the jury is reminded that

10   before each member was accepted and sworn to act as a juror, he

11   or she was asked questions concerning competency,

12   qualifications, and fairness and freedom from prejudice and

13   bias.  On the faith of those answers, the juror was accepted by

14   the parties.  Therefore, those answers are as binding on each

15   of the jurors now as they were then, and should remain so until

16   the jury is discharged from consideration of this case.

17         You are to perform the duty of finding the facts

18   without bias or prejudice as to any party.  You are to perform

19   your final duty in an attitude of complete fairness and

20   impartiality.

21         The case is important to the government, for the

22   enforcement of criminal laws is a matter of prime concern to

23   the community.  Equally, it is important to the defendant, who

24   is charged with a serious crime.

25         The fact that the prosecution is brought in the name

1    of the United States of America entitles the government to no

2    greater consideration than that accorded to any other party to

3    a litigation.  By the same token, it is entitled to no less

4    consideration.  In this regard, all parties, whether government

5    or individuals, stand as equals at the bar of justice.

6            Under your oath as jurors, you are not to be swayed by

7    sympathy.  You are to be guided solely by the evidence in this

8    case.  The crucial hard-core question that you must ask

9    yourselves as you sift through the evidence is:  Has the

10   government proven the guilt of the defendant beyond a

11   reasonable doubt?  It is for you alone to decide whether the

12   government has proven that the defendant is guilty of the

13   crimes charged solely on the basis of the evidence and subject

14   to the law as I charge you.  It must be clear to you that once

15   you let fear or prejudice or bias or sympathy interfere with

16   your thinking, there is a risk that you will not arrive at a

17   true and just verdict.

18           If you have a reasonable doubt as to the defendant's

19   guilt, you should not hesitate for any reason to find a verdict

20   of not guilty.  But, on the other hand, if you should find that

21   the government has met its burden of proving the defendant's

22   guilt beyond a reasonable doubt, you should not hesitate

23   because of sympathy or any other reason to render a verdict of

24   guilty.

25           It is the duty of the attorney for each side of a case

1    to object when the other side offers testimony or other

2    evidence which the attorney believes is not properly

3    admissible.  Counsel also have the right and duty to ask the

4    Court to make rulings of law and to request conferences at the

5    sidebar out of the hearing of the jury.  All those questions of

6    law must be decided by me, the Court.  You should not show any

7    prejudice against an attorney or his client because the

8    attorney objected to the admissibility of evidence or asked for

9    a conference out of the hearing of the jury or asked the Court

10   for a ruling on the law.

11            As I've already indicated, my rulings on the

12   admissibility of evidence do not indicate any opinion about the

13   weight or effect of the evidence.  You are the sole judges of

14   the credibility of all witnesses and the weight and effect of

15   all evidence.

16            There are two types of evidence which you may properly

17   use in deciding whether a defendant is guilty or not guilty.

18            One type of evidence is called direct evidence.

19   Direct evidence is where a witness testifies to what he or she

20   saw, heard or observed.  In other words, when a witness

21   testified about what is known to him or her of his or her own

22   knowledge by virtue of his or own senses.  What he sees, hears,

23   touches, tastes or smells, that is called direct evidence.

24            Circumstantial evidence is evidence which tends to

25   prove a disputed fact by proof of other facts.  There is a

1   simple example of circumstantial evidence which is often used

2   in this courthouse.

3          Assume that when you came into the courthouse this

4   morning, the sun was shining and it was a nice day.  Assume the

5   courtroom blinds were drawn and you could not look outside.  As

6   you were sitting here, someone walked in with an umbrella which

7   was dripping wet, and somebody else then walked in with a

8   raincoat which was also dripping wet.  Now, you cannot look

9   outside of the courtroom and you cannot see whether or not it

10  is raining, so you have no direct evidence of that fact.  But

11  on the combination of facts which I have asked you to assume,

12  it would be reasonable and logical for you to conclude that it

13  had been raining.

14         That is all there is to circumstantial evidence.  You

15  infer on the basis of reason and experience and common sense

16  from an established fact the existence or non-existence of some

17  other fact.

18         Circumstantial evidence is of no less value than

19  direct evidence, for it is a general rule that the law makes no

20  distinction between direct and circumstantial evidence, but

21  simply requires that before convicting a defendant, the jury

22  must be satisfied of the defendant's guilt beyond a reasonable

23  doubt from all of the evidence in the case.

24         During the trial you may have heard the attorneys or

25  the Court use the term "inference," and in their arguments they

1   have asked you to infer on the basis of your reason, experience

2   and common sense from one or more established facts the

3   existence of some other facts.

4          An inference is not a suspicion or a guess.  It is a

5   reasoned, logical decision to conclude that a disputed fact

6   exists on the basis of another fact which you know exists.

7          There are times when different inferences may be drawn

8   from facts, whether proved by direct or circumstantial

9   evidence.  The government asks you to draw one set of

10  inferences, while the defense asks you to draw another.  It is

11  for you, and you alone, to decide what inferences you will

12  draw.

13         The process of drawing inferences from facts in

14  evidence is not a matter of guesswork or speculation.  An

15  inference is a deduction or conclusion which you, the jury, are

16  permitted to draw, but not required to draw, from the facts

17  which have been established by either direct or circumstantial

18  evidence.  In drawing inferences, you should exercise your

19  common sense.

20         So while you are considering the evidence presented to

21  you, you are permitted to draw, from the facts which you find

22  to be proven, such reasonable inferences as would be justified

23  in light of your experience.

24         Here, again, let me remind you that, whether based

25  upon direct or circumstantial evidence, or upon the logical

1    reasonable inferences drawn from such evidence, you must be

2    satisfied of the guilt of the defendant beyond a reasonable

3    doubt before you may convict.

4          Now, you had an opportunity to observe all of the

5    witnesses.  It is now your job to decide how believable each

6    witness was in his or her testimony.  You are the sole judges

7    of the credibility of each witness and of the importance of his

8    or her testimony.

9          You will now have to decide where the truth lies.  And

10   an important part of that decision will involve making

11   judgments about the testimony of the witnesses you have

12   listened to and observed.  In making those judgments, you

13   should carefully scrutinize all of the testimony of each

14   witness, the circumstances under which each witness testified,

15   and any other matter in evidence which may help you to decide

16   the truth and the importance of each witness's testimony.

17         Your decision whether or not to believe a witness may

18   depend on how that witness impressed you.  Was the witness

19   candid, frank and forthright?  Or did the witness seem as if he

20   or she was hiding something, being evasive or suspect in some

21   way?  How did the way the witness testified on direct

22   examination compare with the way the witness testified on

23   cross-examination?  Was the witness consistent in his or her

24   testimony or did he or she contradict himself or herself?  Did

25   the witness appear to know what he or she was talking about and

M213DOUF                       Charge

1    did the witness strike you as someone who was trying to report

2    his or her knowledge accurately?

3           How much you choose to believe a witness may be

4    influenced by the witness's bias.  Does the witness have a

5    relationship with the government or the defendant which may

6    affect how he or she testified?  Does the witness have some

7    incentive, loyalty, or motive that might cause him or her to

8    shade the truth, or does the witness have some bias, prejudice

9    or hostility that may have caused the witness, consciously or

10   not, to give you something other than a completely accurate

11   account of the facts he testified to?

12          Even if the witness was impartial, you should consider

13   whether the witness had an opportunity to observe the facts he

14   or she testified about, and you should also consider the

15   witness's ability to express himself or herself.  Ask

16   yourselves whether the witness's recollection of the facts

17   stand up in light of all of the other evidence.

18          In other words, what you must try to do in deciding

19   credibility is to size a person up in light of his or her

20   demeanor, the explanations given, and in light of all the other

21   evidence in the case, just as you would in any important matter

22   where you are trying to decide if a person is truthful,

23   straightforward, and accurate in his or her recollection.  In

24   deciding the question of credibility, remember that you should

25   use your common sense, your good judgment, and your experience.

1        You may have heard evidence that witnesses made

2   previous statements that are inconsistent with the witness's

3   trial testimony.  These statements were admitted for the

4   purpose of helping you to decide whether to believe the trial

5   testimony of the witness who contradicted himself or herself.

6   If you find that a witness made an earlier statement that

7   conflicts with his or her trial testimony, you may consider

8   that fact in deciding how much of his or her trial testimony,

9   if any, to believe.  In making this determination, you may

10  consider whether the witness purposefully made a false

11  statement or whether it was an innocent mistake; whether the

12  inconsistency concerned an important fact or had to do with a

13  small detail; whether the witness had an explanation for the

14  inconsistency and whether the explanation appealed to your

15  common sense.  It is exclusively your judgment to determine

16  whether the prior statement was inconsistent, and if so, how

17  much weight, if any, is the inconsistent statement to be given,

18  in determining whether to believe whole or part of a witness's

19  testimony.

20       The defendant has called a witness who has given her

21  opinion of the defendant's good character.  This testimony is

22  not to be taken by you as the witness's opinion as to whether

23  the defendant is guilty or not guilty.  That question is for

24  you alone to determine.  You should, however, consider this

25  character evidence, together with all the other facts and all

the other evidence in the case, in determining whether the

defendant is guilty or not guilty of the charges.

Accordingly, if, after considering all of the

evidence, including testimony about the defendant's good

character, you have a reasonable doubt as to guilt, you must

acquit him of those charges.

On the other hand, if, after considering all of the

evidence, including that of defendant's character, you are

satisfied beyond a reasonable doubt that the defendant is

guilty, you should not acquit the defendant merely because you

believe him to be a good character.

In evaluating credibility of the witnesses, you should

take into account any evidence that the witness who testified

may benefit in some way from the outcome of this case.  Such an

interest in the outcome creates a motive to testify falsely,

and may sway the witness to testify in a way that advances his

or her own interests.  Therefore, if you find that any witness

whose testimony you are considering may have an interest in the

outcome of this trial, then you should bear that factor in mind

when evaluating the credibility of his or her testimony and

accept it with great care.

This is not to suggest that every witness who has an

interest in the outcome of a case will testify falsely.  It is

for you to decide to what extent, if at all, the witness's

interest has affected or colored his or her testimony.

1          You have heard the testimony of witnesses employed by

2     law enforcement agencies.  The fact that a witness may be

3     employed by a law enforcement agency does not mean that his or

4     her testimony is necessarily deserving of more or less

5     consideration or greater or lesser weight than that of an

6     ordinary witness.

7          At the same time, it is quite legitimate for defense

8     counsel to attack the credibility of a law enforcement witness

9     on grounds that his or her testimony may be colored by a

10    personal or professional interest in the outcome of the case.

11         It is your decision, after reviewing all the evidence,

12    whether to accept the testimony of the law enforcement witness

13    and to give to that testimony whatever weight, if any, you find

14    it deserves.

15         You heard testimony from cooperating witnesses who

16    either pled guilty to criminal charges or who the government

17    agreed not to prosecute.

18         The law allows the use of cooperating witness

19    testimony, and such testimony is properly considered by the

20    jury.  The testimony of a cooperating witness may be enough in

21    itself to support a conviction if the jury finds that the

22    testimony established guilt beyond a reasonable doubt.  It is

23    also the case that cooperating witnesses' testimony must be

24    scrutinized with great care and viewed with special caution.  A

25    cooperating witness may face fairly long sentences, and may be

M213DOUF                          Charge

1    hoping for a reduced sentence or to avoid prosecution.

2            The decision of who will be prosecuted is a decision

3    solely within the discretion of the United States attorney's

4    office.  For a defendant who pleads guilty, the U.S. attorney's

5    office decides whether to submit a letter to the sentencing

6    judge, and the sentencing court, according to its own

7    determination, decides what sentence to ultimately impose.  A

8    cooperating witness's testimony should be given such weight as

9    it deserves in light of all the facts and circumstances as you

10   would the testimony of any other witness.

11           Because of the possible interest a cooperating witness

12   may have in testifying, let me say a few things that you may

13   want to consider during your deliberations on the subject of

14   cooperating witnesses.

15           The fact that a witness is testifying pursuant to a

16   cooperation or non-prosecution agreement should be consider by

17   you as bearing on his or her credibility.  It does not follow,

18   however, that simply because a person has admitted

19   participating in one or more crimes, he or she is incapable of

20   giving a truthful version of what happened.  However, you

21   should bear in mind that a witness who has entered into such an

22   agreement has an interest in this case different than any

23   ordinary witness.  A witness who realizes that he or she may be

24   able to obtain their own freedom or receive a lighter sentence

25   by giving testimony favorable to the U.S. attorney has a motive

1   to testify falsely.  Therefore, you must examine that testimony

2   with caution and weigh it with great care.  If, after

3   scrutinizing the testimony, you decide to accept it, you may

4   give it whatever weight, if any, you find it deserves.

5          Like the testimony of any other witness, the testimony

6   of a government cooperating witness should be given such weight

7   as it deserves in light of the facts and circumstances before

8   you, taking into account the witness's demeanor and candor, the

9   strength and accuracy of his or her recollection, his or her

10  background, and the extent to which his or her testimony is or

11  is not corroborated by other evidence in the case.  You should,

12  of course, consider whether the testimony was motivated by

13  reward or self-interest.  You should ask yourself whether the

14  cooperating witnesses would benefit more by lying or by telling

15  the truth.  If you believe the witness was motivated by

16  personal gain, consider if the motivation was one that would

17  cause him or her to lie or was it one that would cause him or

18  her to tell the truth and if this motivation colored the

19  testimony.

20         Obviously, you should reject the testimony if you find

21  it was false.  If you are satisfied that the testimony is true,

22  you should accept it.  You may also accept parts and reject

23  parts of the cooperating witness's or of any witness's

24  testimony.

25         One final note in this regard.  It is of no concern of

M213DOUF                    Charge

1    yours why the U.S. attorney made an agreement with this

2    witness.  The government is permitted to make these kinds of

3    agreements.  Your sole concern is to decide whether the witness

4    has given truthful testimony in this case before you.

5           In sum, you should look to all of the evidence in

6    deciding what credence and what weight, if any, you will give

7    to a witness's testimony.

8           Now, in this case I have permitted certain witnesses

9    to testify as expert witnesses and to express their opinions

10   about matters that are in issue.  An expert witness may be

11   permitted to testify to an opinion on those matters about which

12   he or she has special knowledge, skill, experience and

13   training.  Such testimony is presented to you on the theory

14   that someone who is experienced and knowledgeable in the field

15   can assist you in understanding the evidence or in reaching an

16   independent decision on the facts.

17          In weighing this opinion testimony, you may consider

18   the witness's qualifications, his or her opinions, the reasons

19   for testifying, as well as all the other considerations that

20   ordinarily apply when you are deciding whether or not to

21   believe a witness's testimony.  You may give the expert

22   testimony whatever weight, if any, you find it deserves in

23   light of all the evidence in this case.  You should not,

24   however, accept the testimony of an expert witness merely

25   because I allowed the witness to testify as an expert.  Nor

M213DOUF                    Charge

should you substitute your own reason, judgment, and common

sense.  The determination of the facts in this case rests

solely with you.

There are several people whose names you heard during

the trial but who did not appear here to testify.  I instruct

you that both sides had an equal opportunity or lack of

opportunity to call any of these witnesses.  Therefore, you

should not draw any inference or reach any conclusions as to

what they would have testified to had they been called.

You should, however, remember my instructions that the

law does not impose on a defendant in a criminal case the

burden or duty of calling any witnesses or producing any

evidence.  The burden remains with the government to prove the

guilt of a defendant beyond a reasonable doubt.

The defendant did not testify in this case.  Under our

Constitution, he has no obligation to testify or to present any

other evidence, because it is the prosecution's burden to prove

the defendant's guilt beyond a reasonable doubt.  That burden

remains with the prosecution throughout the entire trial and

never shifts to the defendant.  The defendant is never required

to prove that he is innocent.

You may not attach any significance to the fact that

the defendant did not testify.  No adverse inference against

him may be drawn by you because he did not take the witness

stand.  You may not consider this against the defendant in any

M213DOUF                      Charge

1    way in your deliberations in the jury room.

2            During the trial, you may have heard testimony of

3    witnesses or argument by counsel that the government did not

4    utilize specific investigative techniques.  You may consider

5    these facts in deciding whether the government has met its

6    burden of proof, because you should look to all of the evidence

7    or lack of evidence in deciding whether the defendant has been

8    proven guilty.  However, you are also instructed that there is

9    no legal requirement that the government use any specific

10   investigative techniques to prove its case.

11           Your concern, as I have said, is to determine whether

12   or not, on the evidence, the defendant's guilt has been proven

13   beyond a reasonable doubt.

14           You have heard evidence during the trial that

15   witnesses have discussed the facts of the case and their

16   testimony with the lawyers before the witnesses appeared in

17   court.

18           Although you may consider that fact when you are

19   evaluating a witness's credibility, I should tell you that

20   there is nothing either unusual or improper about a witness

21   meeting with lawyers before testifying so that the witness can

22   be aware of the subjects he or she will be questioned about,

23   focus on those subjects, and have the opportunity to review

24   relevant exhibits before being questioned about them in court.

25   Such consultation helps conserve your time and the Court's

time.  In fact, it would be unusual for a lawyer to call a

witness without such consultation.

        Again, the weight you give to the fact or nature of

the witness's preparation for his or her testimony, and what

inferences you draw from such preparation, are matters

completely within your discretion.

        Some of the exhibits that were admitted in evidence

were in the form of charts or summaries.  I decided to admit

these charts and summaries in place of or in addition to the

underlying documents that they represent in order to save time

and avoid unnecessary inconvenience.  You should consider these

charts and summaries as you would any other evidence admitted.

        Now, the question of possible punishment of the

defendant is of no concern to the jury and should not, in any

sense, enter into or influence your deliberations.  The duty of

imposing sentence rests exclusively upon the Court.  Your

function is to weigh the evidence in the case and to determine

whether or not the defendant is guilty beyond a reasonable

doubt, solely upon the basis of such evidence.  Under your oath

as jurors, you cannot allow a consideration of the punishment

which may be imposed upon the defendant, if he is convicted, to

influence your verdict, in any way, or in any sense enter into

your deliberations.

        Although the defendant has been indicted, you must

remember that an indictment is only an accusation.  It is not

M213DOUF                    Charge

1    evidence.  The defendant has pled not guilty to that

2    indictment.

3            As a result of the defendant's plea of not guilty, the

4    burden is on the prosecution to prove guilt beyond a reasonable

5    doubt.  This burden never shifts to the defendant for the

6    simple reason that the law never imposes upon a defendant in a

7    criminal case the burden or duty of calling any witnesses or

8    producing any evidence.

9            The law presumes the defendant to be innocent of all

10   of the charges against him.  I therefore instruct you that the

11   defendant is to be presumed by you to be innocent throughout

12   your deliberations until such time, if ever, you as a jury are

13   satisfied that the government has proven him guilty beyond a

14   reasonable doubt.

15           The defendant begins the trial here with a clean

16   slate.  This presumption of innocence alone is sufficient to

17   acquit a defendant unless you as jurors are unanimously

18   convinced beyond a reasonable doubt of his guilt after a

19   careful and impartial consideration of all of the evidence in

20   this case.  If the government fails to sustain its burden, you

21   must find the defendant not guilty.

22           This presumption was with the defendant when the trial

23   began and remains with him even now as I speak to you and will

24   continue with the defendant into your deliberations, unless and

25   until you are convinced that the government has proven his

guilt beyond a reasonable doubt.

I've said that the government must prove the defendant guilty beyond a reasonable doubt.  The question naturally is, what is a reasonable doubt?  The words almost define themselves.  It is a doubt based upon reason and common sense. It is a duty that a reasonable person has after carefully weighing all of the evidence.  It is a doubt which would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.  A reasonable doubt is not a caprice or a whim.  It is not a speculation or suspicion.  It is not an excuse to avoid the performance of an unpleasant duty, and it is not sympathy.

In a criminal case, the burden is at all times upon the government to prove guilt beyond a reasonable doubt.  The law does not require that the government prove guilt beyond all possible doubt.  Proof beyond a reasonable doubt is sufficient to convict.  This burden never shifts to the defendant, which means that it is always the government's burden to prove each of the elements of the crimes charged beyond a reasonable doubt.

If, after a fair and impartial consideration of all of the evidence or lack of evidence, you have a reasonable doubt,

M213DOUF                    Charge

1    it is your duty to acquit the defendant.  On the other hand,

2    if, after fair and impartial consideration of all the evidence,

3    you are satisfied of the defendant's guilt beyond a reasonable

4    doubt, you should vote to convict.

5           With these preliminary instructions in mind, let us

6    turn to the charges against the defendant as contained in the

7    indictment.  I remind you that an indictment itself is not

8    evidence.  It merely describes the charge made against the

9    defendant.  It is an accusation.  It may not be considered by

10   you as any evidence of the guilt of the defendant.

11          In reaching your determination of whether the

12   government has proved the defendant guilty beyond a reasonable

13   doubt, you may consider only the evidence introduced or lack of

14   evidence.

15          The defendant is charged with knowingly and

16   intentionally participating in two separate conspiracies.

17          Count One of the indictment charges the defendant with

18   conspiracy to distribute opioid drugs, specifically oxycodone

19   and 400 grams of more of fentanyl to pharmacies that he knew

20   were unlawfully dispensing those drugs.

21          Count Two of the indictment charges the defendant with

22   conspiracy to defraud the DEA by agreeing to make

23   misrepresentations and not reporting suspicious purchase orders

24   to the DEA as required by law.

25          A conspiracy is a kind of criminal partnership -- a

1   combination or agreement of two or more persons to join

2   together to accomplish some unlawful purpose.

3         The crime of conspiracy is separate and distinct from

4   the actual violation of any specific federal laws, which the

5   law refers to as substantive crimes.

6         Indeed, you may find a defendant guilty of the crime

7   of conspiracy even though the substantive crime, which was the

8   object of the conspiracy, was not actually committed.  Congress

9   has deemed it appropriate to make conspiracy, standing alone, a

10  separate crime, even if the conspiracy is not successful.

11        You must consider each conspiracy separately.  You may

12  find that the defendant participated in one conspiracy, both,

13  or neither, based on the evidence presented to you.

14        In order to prove the defendant guilty of

15  participating in a conspiracy, the government must prove both

16  of the following two elements beyond a reasonable doubt:

17        First, the existence of the conspiracy as charged in

18  it the indictment; in other words, that there was in, fact, an

19  agreement or understanding by two or more persons to violate

20  the law as alleged.

21        And second, that the defendant knowingly and

22  intentionally became a member of that particular conspiracy at

23  some point during the applicable period, and that he joined and

24  participated in the conspiracy, knowing of its illegal purpose.

25        The first element which the government must prove as

1    I've indicated beyond a reasonable doubt to establish the

2    offense of conspiracy is that two or more persons entered the

3    unlawful agreement as charged in the indictment.

4            In order for the government to satisfy this element,

5    you need not find that the alleged members of the conspiracy

6    met together and entered into any express or formal agreement.

7    Similarly, you need not find that the alleged conspirators

8    stated in words or writing what the scheme was, its object or

9    purpose, or every precise detail of the scheme or the means by

10   which its object or purpose was to be accomplished.

11           What the government must prove is that there was a

12   mutual understanding, either spoken or unspoken, between two or

13   more people to cooperate with each other to accomplish an

14   unlawful act.

15           You may, of course, find that the existence of an

16   agreement to disobey or disregard the law has been established

17   by direct proof.  However, since conspiracy, by its very

18   nature, is in many ways characterized by secrecy, you may also

19   infer its existence from the circumstances and the conduct of

20   the parties involved.

21           In a very real sense, then, in the context of

22   conspiracy cases, actions often speak louder than words.  In

23   this regard, you may, in determining whether an agreement

24   existed, consider the actions and statements of all of those

25   you find to be participants as proof that a common design

1  existed on the part of persons involved in a conspiracy to

2  accomplish an unlawful purpose.

3         In determining whether an agreement existed here,

4  consider the actions and statements of all of those whom you

5  find to be participants as proof that a common design existed

6  on the part of persons involved in a conspiracy to act together

7  to accomplish an unlawful purpose.  It is sufficient to

8  establish the existence of a conspiracy, if, after considering

9  all of the evidence, you find beyond a reasonable doubt that at

10  least two alleged conspirators came to a mutual understanding,

11  either spoken or unspoken, to accomplish the unlawful objective

12  alleged.

13         Now, the second element which the government must

14  prove beyond a reasonable doubt to establish the offense of

15  conspiracy is that the defendant knowingly and intentionally

16  became a member of the conspiracy.

17         If you are satisfied that the conspiracy charged in

18  the indictment existed, you must next ask yourselves whether

19  the defendant was a member of that conspiracy.  In deciding

20  whether the defendant was in fact a member of the conspiracy,

21  you should consider whether the defendant knowingly and

22  willfully joined the conspiracy.  Did he participate in it with

23  knowledge of its unlawful purpose and with the specific

24  intention of furthering it objective?

25         "Unlawfully" means contrary to law.  But in terms of

1    its application to the defendant's state of mind, the

2    government is not required to show that the defendant knew that

3    he was breaking any particular law.  The government must prove,

4    however, that the defendant was aware of the generally unlawful

5    nature of his acts.

6            "Knowingly" means to act consciously and voluntarily,

7    rather than by mistake or accident or mere inadvertence.

8            "Intentionally" means to act deliberately.

9            "Willfully" means to act purposefully and with an

10   intent to do something unlawful.

11           If you find beyond a reasonable doubt that the

12   defendant participated in the charged conspiracy and did so

13   knowingly, intentionally, and willfully, then the second

14   element is satisfied.  In making that finding, you must be

15   satisfied beyond a reasonable doubt that in joining the

16   conspiracy (if you find that the defendant did join the

17   conspiracy), the defendant knew what he was doing -- that he

18   took the actions in question deliberately and purposefully.

19   The defendant's acts must have been the product of the

20   defendant's conscious objective, and not the product of a

21   mistake or accident or mere negligence or some other innocent

22   reason.

23           As I mentioned a moment ago, before the defendant can

24   be found to have been a conspirator, you must first find that

25   he knowingly joined in the unlawful agreement or plan.  The key

M213DOUF                    Charge

1    question, therefore, is whether the defendant joined the

2    conspiracy with an awareness of at least some of the basic aims

3    and purposes of the unlawful agreement.

4         It is important for you to note that the defendant's

5    participation in the conspiracy may be established by

6    independent evidence of his own acts or statements, as well as

7    those of any other individuals you find to be members of the

8    alleged conspiracy, and the reasonable inferences which may be

9    drawn from them.

10        The defendant's knowledge is a matter of inference

11   from the facts proved.  In that connection, I instruct you that

12   to be a member of the conspiracy, the defendant need not have

13   known the identities of each and every other member, nor need

14   he have been apprised of all of their activities.  Moreover,

15   the defendant need not have been fully informed as to all of

16   the details or the scope of the conspiracy in order to justify

17   an inference of knowledge on his part.  Furthermore, the

18   defendant need not have joined all of the conspiracy's unlawful

19   objectives.

20        The extent of a defendant's participation has no

21   bearing on the issue of a defendant's guilt.  A conspirator's

22   liability is not measured by the extent or duration of his

23   participation.  Indeed, each member may perform separate and

24   distinct acts and may perform them at different times.  Some

25   conspirators play major roles, while others play minor roles in

1   the scheme.  An equal role is not what the law requires.  In

2   fact, even a single act may be sufficient to draw a defendant

3   within the ambit of a conspiracy.

4         I want to caution you, however, that mere association

5   with one or more members of the conspiracy does not

6   automatically make the defendant a member.  A person may know

7   or be friendly with a conspirator without being a conspirator

8   himself.  Mere similarity of conduct or the fact that they may

9   have assembled together and discussed common aims and interests

10  does not necessarily establish membership in the conspiracy.

11        I also want to caution you that mere knowledge or

12  acquiescence without participation in the unlawful plan is not

13  sufficient.  Moreover, the fact that the acts of the defendant,

14  without knowledge, merely happen to further the purposes or

15  objectives of the conspiracy does not make the defendant a

16  member.  More is required under the law.  What is necessary is

17  that the defendant must have participated with knowledge of at

18  least some of the purposes or objectives of the conspiracy, and

19  with the intention of aiding in the accomplishment of those

20  unlawful ends.

21        Now, when considering each conspiracy charged in the

22  indictment, I instruct you that when people enter into a

23  conspiracy to accomplish an unlawful end, they become agents or

24  partners of one another in carrying out the conspiracy.

25        In determining the factual issues before you, you may

1    consider against the defendant any acts or statements made in

2    furtherance of the alleged conspiracy by any of the people that

3    you find, under the standards I have described, to have been

4    his co-conspirators.  Even if such acts or statements were not

5    made in his presence or were made without his knowledge.

6           Ultimately, the question is this:  Has the government

7    proven beyond a reasonable doubt that the defendant knowingly

8    and intentionally joined the conspiracy charged and

9    participated in it with the awareness of its unlawful purpose

10   and as something he intended to bring about?

11          The unlawful agreement as charged in Count One, also

12   known as the object of the conspiracy, is to distribute a

13   controlled substance.  Oxycodone and fentanyl are controlled

14   substances.

15          In order to prove this charge against the defendant,

16   the government must establish beyond a reasonable doubt that

17   the unlawful agreement to distribute fentanyl and/or oxycodone

18   was an object of the conspiracy in which the defendant

19   participated.

20          Remember, as I mentioned earlier, the ultimate success

21   of the conspiracy, or the actual commission of the crime that

22   is the object of the conspiracy, is not required.  The offense

23   alleged in Count One is simply that the defendant participated

24   in the conspiracy knowing that the object of the conspiracy was

25   to distribute oxycodone and fentanyl.

1          Now, the word "distribution" means the actual,

2    constructive or attempted transfer of the drug.  To distribute

3    simply means to deliver, to pass on, to hand over something to

4    another person, or to cause it to be delivered, passed on, or

5    handed over to another.  Distribution does not require a sale.

6          Now, as I have just noted, the object of the

7    conspiracy charged in Count One of the indictment is the

8    distribution of controlled substances.  The law, or statute,

9    which makes it a crime to distribute a controlled substance

10   applies to companies that sell controlled substances, known as

11   distributors, and people who work with or for those companies.

12   Under the law, a company that distributes controlled substances

13   for medical use is required to register with the Drug

14   Enforcement Administration.  A registered distributor is

15   required to, among other things, maintain effective controls

16   against diversion of controlled substances into other than

17   legitimate medical channels.

18         Under the law, a distributor that is registered to

19   distribute controlled substances may lawfully distribute such

20   controlled substances if the distributor and its employees

21   maintain effective controls and procedures to guard against the

22   controlled substances they sell being diverted outside of

23   legitimate medical channels, and distribute controlled

24   substances to be dispensed by doctors and pharmacists in the

25   regular course of professional practice and for legitimate

1    medical purposes.  By contrast, distributors or their employees

2    who sell controlled substances in a manner not authorized by

3    their registration and not in conformity with the law may be

4    found guilty of illegally distributing controlled substances.

5            Distribution of controlled substances is illegal when

6    the distributor ships controlled substances without maintaining

7    effective controls and procedures to guard against those

8    controlled substances they sell being diverted outside of

9    legitimate medical channels or without attempting to do so in

10   good faith.

11           Distributing controlled substances is also illegal

12   when the distributor does not distribute controlled substances

13   to be dispensed by doctors and pharmacists in the regular

14   course of professional practice and for legitimate medical

15   purposes or does not attempt to do so in good faith.

16           Good faith in this context means the honest exercise

17   of best professional judgment.  It means that the distributor

18   acted in accordance with what he or she reasonably believed to

19   be proper distributing practice and what was required by the

20   distributor's registration with the Drug Enforcement

21   Administration.

22           A defendant is under no burden to prove his good

23   faith.  Rather, the burden of establishing criminal intent and

24   lack of good faith rests upon the government.  Thus, under

25   Count One, the government must prove beyond a reasonable doubt

1   that the object of the conspiracy was to distribute controlled

2   substances in a manner not authorized by law.

3        If you find that the government has proven beyond a

4   reasonable doubt the two elements that I have just described to

5   you, then there is one more issue that you must decide.  I have

6   provided you with a special verdict form asking you to fill in

7   the amount of fentanyl that defendant conspired to unlawfully

8   distribute.  You should address this issue and complete that

9   portion of the form if you find the elements of Count One to

10  have been established beyond a reasonable doubt.

11       Basically I am going to give you the verdict sheet.

12  The first question asks:  How do you find the defendant,

13  Laurence F. Doud III, with respect to the charge of conspiracy

14  to unlawfully distribute controlled substances?  Guilty or not

15  guilty.  And it indicates if you find the defendant guilty of

16  Count One, please answer questions two through five.

17       If you find the defendant not guilty of Count One,

18  proceed directly to question five under Count Two.

19       And question two asks:  Did the defendant conspire to

20  unlawfully distribute oxycodone?  You answer yes or no.

21       Question three asks, did the defendant conspire to

22  unlawfully distribute fentanyl?  You answer yes or no.

23       Question four says:  What quantity of fentanyl did the

24  defendant conspire to unlawfully distribute?  And it asks you

25  whether or not 400 grams or more, at least 40 grams but less

M213DOUF                    Charge

1    than 400 grams, or less than 400 grams.  And again, you answer

2    those questions, if you answer yes to Count One.

3         And then you go on to Count Two, and the question

4    number five asks:  How do you find the defendant, Laurence F.

5    Doud III, with respect to the charge of conspiracy to defraud

6    the Drug Enforcement Administration?  Guilty or not guilty.

7         And then it has a signature line for your foreperson.

8    Your foreperson should sign once you've answered the

9    appropriate questions, sign the verdict form, date it, and just

10   send us a separate note saying you've reached a verdict when

11   you have reached a unanimous verdict.  Don't send out the

12   verdict form.  Hold on to the verdict form.  When I get your

13   separate note saying you've reached a verdict, I'll bring you

14   out and we'll take the verdict, we'll ask the questions on the

15   verdict form, and take the verdict form from the foreperson

16   here in open court.

17        Now, with regard to Count Two, conspiracy to defraud

18   the DEA.  The indictment charges that it was a part and an

19   object of that conspiracy charged in Count Two that the

20   defendant, and others known and unknown, willfully and

21   knowingly, using deceit, craft, trickery, and dishonest means,

22   would and did defraud the United States and an agency thereof,

23   to wit, the Drug Enforcement Administration, thereby impeding,

24   impairing, defeating and obstructing the lawful function of the

25   agency.

1          With respect to the first element, a conspiracy, as

2     I've already instructed you, is an agreement between two or

3     more persons to violate the law.  You should keep in mind all

4     of my instructions that I gave you with respect to conspiracy

5     in general as you are considering Count Two.  However, the

6     object or unlawful goal of the conspiracy charged in Count Two

7     is different.  I will give you some additional instructions

8     about those objects now.

9          A conspiracy to defraud the United States means that

10    the defendant and his co-conspirators are accused of conspiring

11    to impede, impair, obstruct, or defeat by fraudulent or

12    dishonest means the lawful regulatory and enforcement functions

13    of an agency of the United States.  I instruct you that the

14    Drug Enforcement Administration, also called the DEA, is an

15    agency of the United States government.

16         In order to find the defendant impaired, impeded or

17    obstructed a legitimate governmental function, you must find

18    that the object of the conspiracy was to interfere with or

19    obstruct one of the United States' lawful government functions.

20    Not all conduct that impedes the lawful functions of a

21    government agency is illegal.  To be unlawful, such conduct

22    must entail fraud, deceit, or other dishonest means.  A

23    conspiracy to impede the functions of a government agency by

24    fraud or dishonest means may include such things as providing

25    false information, deceitfully not complying with a regulatory

M213DOUF                    Charge

1   requirement to provide information, deceitfully processing

2   transactions with incomplete information, or engaging in any

3   other fraudulent or deceptive conduct that would have the

4   effect of impairing the ability of the government agency to

5   determine material aspects of a transaction.

6           By citing these examples, I certainly do not mean to

7   suggest that these are the only actions that could impede the

8   DEA by fraudulent or dishonest means.  Nor do I express any

9   view as to whether conduct similar to these examples took place

10  here.

11          Dishonestly obstructing the lawful function of a

12  government agency must be a purpose of the conspiracy, not

13  merely a foreseeable consequence of it.  However, defrauding

14  the DEA need not be the defendant's sole or even primary

15  purpose, so long as it is a purpose of the scheme.  The intent

16  to defraud the DEA may be incidental to another primary

17  motivation or purpose.  Actual contact between the defendant

18  and an official of the United States government is not an

19  element of the crime, nor is it necessary for you to find that

20  the government was subject to any loss of money or property as

21  a result of the conspiracy.  It is also not necessary for you

22  to find that the impairment violated any separate law.  All

23  that is required is that an object of the conspiracy was to

24  interfere with or obstruct one of the DEA's lawful government

25  functions by deceit, craft, trickery, or by means that are

M213DOUF                    Charge

1   dishonest.

2           In order to sustain its burden of proof under Count

3   Two of the indictment, the government must also prove beyond a

4   reasonable doubt that one of the members of the alleged

5   conspiracy to defraud knowingly performed at least one overt

6   act, and that this overt act was performed during the existence

7   or life of the conspiracy and was done to somehow further the

8   goal of the conspiracy or agreement.

9           The term "overt act" means some type of outward,

10  objective action performed by one of the members of the

11  agreement or conspiracy.

12          In order for the government to satisfy this element,

13  it is not required that all of the overt acts alleged in the

14  indictment or even any of the overt acts contained in the

15  indictment be proven.  Although you must find unanimously that

16  some overt act in furtherance of the conspiracy to defraud has

17  been proved, you do not have to be unanimous as to which act.

18          Similarly, you need not find that the defendant

19  committed the overt act.  It is sufficient for the government

20  to show that one of the alleged conspirators knowingly

21  committed an overt act in furtherance of the conspiracy, since

22  such an act becomes, in the eyes of the law, the act of all the

23  members of the conspiracy.

24          You are further instructed that the overt act need not

25  have been committed at precisely the time alleged in the

1    indictment.  It is sufficient if you are convinced beyond a

2    reasonable doubt that it occurred at or about the time and

3    place stated.  However, you must find that the overt act

4    occurred while the conspiracy was still in existence.

5         You should bear in mind that the overt act standing

6    alone may be an innocent lawful act.  Frequently, however, an

7    apparently innocent act sheds its harmless character if it is a

8    step in carrying out, promoting, aiding or assisting a

9    conspiratorial scheme.  You are therefore instructed that the

10   overt act does not have to be an act which in and of itself is

11   criminal or constitutes an objective of the conspiracy.

12        The government does not need to prove an overt act

13   with respect to Count One.  This instruction applies only to

14   Count Two.

15        Now, as I have just instructed you, the government

16   must prove beyond a reasonable doubt that the defendant acted

17   knowingly.  If the defendant lacked knowledge that controlled

18   substances were being diverted and sold illegally, you must

19   find him not guilty, even if the government proves that the

20   only reason the defendant lacked such knowledge was because he

21   was careless, negligent, or even foolish in failing to obtain

22   that knowledge.

23        As the parties have referred to, in determining

24   whether the defendant acted knowingly, you may consider whether

25   the defendant deliberately closed his eyes to what would

1    otherwise have been obvious to him.  If you find beyond a

2    reasonable doubt that the defendant acted with, or that the

3    defendant's ignorance was solely and entirely the result of a

4    conscious purpose to avoid learning the truth, then this

5    element may be satisfied.  However, guilty knowledge may not be

6    established by demonstrating that the defendant was merely

7    negligent, foolish or mistaken.

8            If you find that the defendant was aware of a high

9    probability that controlled substances were diverted and sold

10   illegally, and that the defendant acted with deliberate

11   disregard of those facts, you may find that the defendant acted

12   knowingly.  However, if you find that the defendant did not

13   knowingly and intentionally join a conspiracy to unlawfully

14   distribute controlled substances or to defraud the DEA, he may

15   not be convicted of that particular conspiracy as charged.

16           It is entirely up to you whether you find that the

17   defendant deliberately closed his eyes to the truth and any

18   inferences to be drawn from the evidence on this issue.

19           Each of the two conspiracy counts in the indictment

20   constitute a separate offense or crime.  You must consider each

21   count of the indictment separately, and you must return a

22   separate verdict on each count in which the defendant is

23   charged.

24           The indictment refers to various dates or times.  It

25   is not essential that the government prove that the conspiracy

 1    alleged started and ended on any specific dates.  Indeed, it is

 2    sufficient if you find that the conspiracy was formed and that

 3    it existed for some time within the dates alleged.

 4         Ladies and gentlemen, when you go into the jury room

 5    before you begin your deliberations, you should select someone

 6    to be your foreperson.  The foreperson, as I said, will be

 7    responsible for signing all communications to the Court and for

 8    handing them to the marshal during your deliberations.  We will

 9    take your signed and dated verdict sheet from your foreperson

10    when you return to court, and ask your foreperson to announce

11    your verdict in open court.

12         You're about to go in to the jury room and begin your

13    deliberations.  If during those deliberations you want to see

14    any exhibits, they will be sent to you in the jury room upon

15    request.  If you want any of the testimony read, that can also

16    be done.  But please remember that it is not always easy to

17    locate exactly what you want, so be as specific as you possibly

18    can in requesting exhibits or portions of testimony read back

19    if that's what you want.

20         Your requests for exhibits or testimony -- in fact any

21    communication with the Court -- during your deliberations

22    should be made to me in writing, signed by your foreperson, and

23    given to one of the marshals outside your door.  I will respond

24    to any requests or questions you have as promptly as possible

25    by sending in what exhibits you desire or by having you return

1    to the courtroom so I can speak with you in person.  In any

2    event, do not tell me or anyone else how the jury stands on the

3    issue of whether or not the defendant's guilt has been proven

4    until after a unanimous verdict is reached.  When you have

5    reached a unanimous verdict, just send us a note indicating

6    that you have reached a verdict, without telling us what that

7    verdict is, and we will take that verdict from you when you

8    come out with the verdict form.

9            Remember, the government to prevail must prove the

10   essential elements of each charge by the required degree of

11   proof.  As already explained in these instructions, if it

12   succeeds, your verdict should be guilty.  If it fails, it

13   should be not guilty.  To report a verdict, either guilty or

14   not guilty, it must be unanimous.  You must all agree.

15           Your function is to weigh the evidence in the case and

16   determine whether or not the defendant has been proven guilty

17   of the crimes charged, solely upon the basis of such evidence.

18           Each juror is entitled to his or her opinion.  Each

19   should, however, exchange views with his or her fellow jurors.

20   That is the very purpose of jury deliberations, to discuss and

21   consider the evidence, to listen to the arguments of fellow

22   jurors, to present your individual views, to consult with one

23   another, and to reach an agreement based solely and wholly on

24   the evidence if you can do so without violence to your own

25   individual judgment.  Each of you must decide the case for

M213DOUF                        Charge

1    yourself, after consideration with your fellow jurors of the

2    evidence in the case.  But you should not hesitate to change an

3    opinion, which, after discussion with your fellow jurors,

4    appears to be erroneous.  However, if after carefully

5    considering all of the evidence and the arguments of your

6    fellow jurors you entertain a conscientious view that differs

7    from the others, you are not to yield your position simply

8    because you are outnumbered.  Your final vote must reflect your

9    conscientious determination as to how the issues should be

10   decided.  Your verdict, whether guilty or not guilty, must be

11   unanimous.

12        If you do not understand or have forgotten any portion

13   of my instructions, you may request that any portion of my

14   instructions be read back or clarified or explained.

15        We need 12 jurors to deliberate.  So, Juror No. 13,

16   Ms. Knutsen; Juror No. 15, Mr. Franco; and Juror No. 16,

17   Ms. Rosendary, I'm going to excuse you from any further jury

18   service at this time.  I want to thank you for your jury

19   service.  Obviously, we lost one juror.  If we lost more

20   jurors, your presence would be required.  But, we are going to

21   use the first 12 jurors in the box to deliberate on this case.

22   So, your lunch didn't come.  If you want to stick around for

23   it, I think it's supposed to be here between 12 and 12:30.

24   Otherwise I am going to discharge you from any further jury

25   service and with thanks of the Court and thanks of the parties.

1   And obviously, particularly under COVID conditions, it's more

2   of a burden than even usually it is.  And your services were

3   really required to make sure that, after two weeks of

4   testimony, that we have a full jury to decide this case.

5           So, I'm going to thank you for your jury service and

6   I'm going to excuse you from any further jury service at this

7   time.  Thank you.  You can leave.  And as I say, if you want to

8   stick around for lunch, if you have anything in the jury room

9   that belongs to you, please take that out, because I am going

10  to send the jury down to the jury room with the marshal to

11  begin their deliberations.

12          Did you have something?

13          MR. GOTTLIEB:  I didn't know if we were going to have

14  a brief sidebar, your Honor.

15          THE COURT:  Did we need to?

16          MR. GOTTLIEB:  Yes, please.

17          (At the sidebar)

18          THE COURT:  Does government have any exceptions to the

19  charge?

20          MR. ROOS:  No, nothing from the government.

21          MR. GOTTLIEB:  Just one, your Honor.  Under object of

22  the conspiracy.  Page 58.  I thought in our conference the

23  other day, this issue had been resolved, so I could be wrong.

24  But the last sentence which reads, the offense alleged in Count

25  One is simply that the defendant participated in the conspiracy

1    knowing that the object of the conspiracy was to distribute

2    oxycodone and fentanyl.  It ends there.

3            I think properly, and especially because you say

4    simply, it should read that the object of the conspiracy was to

5    distribute oxycodone and fentanyl for unlawful purposes.  And I

6    would ask that that is a more complete statement as to what

7    Count One's offense is.

8            THE COURT:  Excuse me.  First of all, I'll hear from

9    the government.  I don't have a recollection that you did raise

10   this issue.  And two, it seems to me that the instructions as a

11   whole have made that clear.  And I think that would simply be

12   repetitive at this point.  But let me hear from the government.

13           MR. BURNETT:  So I agree.  First, I agree this did not

14   come up during the charging conference.  And second, that the

15   instructions as a whole -- and as you instructed the jury, the

16   instructions need to be considered as a whole -- clearly state

17   they need to find there was an agreement to distribute

18   controlled substances unlawfully.  I also would add that the

19   proposed addition is actually not legally accurate.  For

20   unlawful purposes is not -- the purposes is confusing.  What

21   the object is to distribute unlawfully, period.  That's what

22   the instructions said.

23           MR. GOTTLIEB:  Well, I beg to differ.  The conspiracy,

24   the object of the alleged conspiracy was not simply to

25   distribute oxycodone and fentanyl.  And again, your Honor, once

M213DOUF                    Charge

1   it was presented to the jury by saying the offense alleged in

2   Count One is simply, then there must be a more complete

3   explanation as to what the object was, and it is a misstatement

4   to say that the object of the Count One conspiracy is merely to

5   distribute oxycodone and fentanyl.  It has to be for --

6           MR. JANEY:  Unlawfully.

7           MR. GOTTLIEB:  The word unlawfully has to be included

8   at some point.

9           MR. ROOS:  That's the whole next page.

10          MR. BURNETT:  And the page before.

11          THE COURT:  I don't disagree with you that the jury

12  should have that complete instruction.  But I think the jury

13  does have that complete instruction.  And again, I don't think

14  this was an issue that you raised.  And also, it talks about

15  being -- I'm sorry.  Can I see that again?  It talks about the

16  defendant participating in a conspiracy.  I defined what the

17  definition of conspiracy is.  And the definition of conspiracy

18  includes exactly what you say that you want the addition here.

19  So I don't think that it's timely for me to try to go back

20  through this with the jury.  I think they have clear

21  instruction about what their responsibilities are, and what you

22  all gave me to apply to this case.  I think it is

23  repetitiveness at that point, is not necessary, and I'm not

24  sure this is the timely request because I don't have a

25  recollection we discussed this.

M213DOUF                    Charge

1          MS. ROTHMAN:  Your Honor, we have one thing.

2          MR. ROOS:  Not substantive.  Which is the excused

3     jurors, I don't know if we should tell them to, like, not

4     discuss and sort of watch their phones just in case the jury

5     deliberates another day and someone gets sick.  Sort of leave

6     it to you.

7          THE COURT:  I don't keep alternates unless both sides

8     are going to agree that if we lose one of these 12, that you're

9     going to allow a substitution of the alternate days into their

10    deliberations.  So do you want me to keep the alternates for

11    that purpose?  Are you agreeing if we lose a deliberating juror

12    during deliberations that we can substitute an alternate?

13         MR. GOTTLIEB:  Can I suggest this.  Perhaps at least

14    for a short while today, for the balance of the day, to keep

15    them here.

16         THE COURT:  Again, you have to commit one way or the

17    other.  If you are not going to commit to having the juror

18    substitute.  If we lose a juror, then, I'm not going to keep

19    these jurors in.

20         MR. GOTTLIEB:  See, I would commit, I would commit for

21    today.  After today, I would reserve my right to decommit.

22         THE COURT:  No.  You can't get away with that part.

23    I'm not keeping these alternates.  It doesn't make sense.  I'm

24    not going to have them sitting in a separate room to wait and

25    see when you decide you want to let us know.

M213DOUF

1      MR. JANEY:  Can I ask, what is your Honor's practice

2    if we lose one of the 12?

3      THE COURT:  Then we're going to adjourn until that

4    juror is well.

5      MR. JANEY:  Okay.

6      (In open court)

7      THE COURT:  Can we swear in the marshal.

8      (Marshal sworn)

9      THE COURT:  Ladies and gentlemen, I am going to ask

10   that you begin your deliberations at this time.  Your lunch

11   should be here within the next 15 to 30 minutes.  Thank you.

12     (Jury begins deliberations.  Time noted:  12 p.m.)

13     THE COURT:  Just make sure you agree which exhibits

14   are in evidence.  And if the jury asks for an exhibit, as long

15   as both sides agree that that's what they have asked for, I

16   will send it straight in and we don't have to reassemble.  If

17   they ask for testimony, then we'll reassemble and see how to

18   respond to that request, or if they ask for further jury

19   instructions or any other note, we'll do that.

20     I would just sort of hang around for the next 20

21   minutes or so in case we get a note immediately, particularly

22   for exhibits.  I will notify you once they get their lunch.  As

23   soon as they get their lunch, then I would take lunch, and as

24   long as we can reach you and you can be back in the courtroom

25   within 10 minutes, that's sufficient.  You don't have to stay

M213dou2                    Deliberations

1      in the courtroom.

2              MS. ROTHMAN:  Your Honor, should we pass our cell

3      phones to your clerk?

4              THE COURT:  Yes.  She'll take all that information so

5      we can get ahold of you if we get a note from the jury.

6              (Recess pending verdict)

7              (In open court; jury not present)

8              THE COURT:  I think we're going to go ahead and

9      adjourn for the day and have them come back tomorrow and

10     continue deliberations, so let's bring the jury up.  I'll tell

11     them to come back tomorrow at 9:45.  When everyone arrives,

12     they can continue their deliberations.  They don't have to wait

13     for us.

14             We have a note that reads:  We would like to adjourn

15     for day.  But request the following exhibits and e-mails for

16     consideration when we resume tomorrow morning.  And it has a

17     list of exhibits and a list of e-mails.  I'll hand that to the

18     parties, if you can pull all of that together by 9:30 tomorrow

19     morning, then we can send it right into the jury room when they

20     continue at 9:45 with their deliberations.

21             Can you bring in the jury, please.

22             (Jury present.  Time noted 5:02 p.m.)

23             THE COURT:  Okay, ladies and gentlemen, we have your

24     note and we're going to adjourn for the day.  We're going to

25     pull together the exhibits that you've requested and have them

M213dou2                         Deliberations

1  ready for you tomorrow morning.  I am going to ask that you be

2  back in the jury room before 9:30 to continue your

3  deliberations.

4          Don't discuss the case until all 12 of you have

5  arrived.  We will try to get the exhibits in there before you

6  arrive.  And you don't have to wait for us, as soon as all 12

7  of you arrive, just go ahead and continue your deliberations

8  and we'll wait to hear from you again.

9          All right.  So have a good evening.  I'll see you

10  tomorrow morning at 9:45.

11          (Jury excused)

12          THE COURT:  Okay, I'll give you the note.  See if you

13  can identify the exhibits and pull them together so we can send

14  them into the jury room.  Be prepared to do so by 9:30 tomorrow

15  morning.

16          All right.  Have a good evening.  I'll see you all

17  tomorrow.

18          (Adjourned until February 2, 2022, at 9:45 a.m.)

19

20

21

22

23

24

25