

Robert C. Gottlieb & Associates PLLC
Trinity Building
111 Broadway, Suite 701
New York, NY 10006
Tel: (212) 566-7766 · Fax: (212) 374-1506
www.robertcgottlieblaw.com
New York · Rome

March 7, 2023

**VIA ECF**
The Honorable Judge George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

RE:   *United States v. Laurence Doud III*, 19 Cr. 285 (GBD)

Dear Judge Daniels:

  As you know, this law firm represents Laurence Doud III in the above-referenced criminal matter. We write to oppose the Government's request for the Court to enter an order of forfeiture as to Mr. Doud in the amount of $589,032. Inexplicably, the Government advances the claim that Mr. Doud should be held to forfeit every dollar that Rochester Drug Cooperative, Inc. ("RDC") made from the sale of any controlled substance to a pharmacy which exhibited a red flag during the time period of the Indictment. To support this, the Government relies solely on the testimony of Dr. David Cutler, whose testimony in no way established that any particular controlled substance shipment was diverted or that the proceeds from any specific sale were illicit. The Court should deny the Government's request for an order of forfeiture as to Mr. Doud as it has failed to meet the preponderance of the evidence burden with respect to the proceeds generated through illegal controlled substance sales. Pure speculation cannot form the basis for a forfeiture demand. F.R.C.P. 32.2(b)(1) (requiring sufficient nexus between the property to be forfeited and the criminal activity).

  In its forfeiture request, the Government continues to make unsupported and clearly erroneous assertions that it proved specific sales made by the Defendant's company were established to be diverted and seeks forfeiture pursuant to that misguided position. Yet Dr. Cutler's analysis at trial, which forms the sole basis for the Government's forfeiture claim, relies on the same faulty logic which the Court has already rejected in finding that there was no evidence to support the Government's claim for diverted drug weights.

  Dr. Cutler's testimony established only that Mr. Doud's bonus was correlated to sales, that Rochester Drug Cooperative generated certain revenue from the sales of controlled substances and non-controlled substances, and that certain pharmacies exhibited red flags over the course of the time period described in the Indictment. *See*. Tr. at 1301-1307, 1421-1423. No Government witness, including Dr. Cutler, was able to testify regarding what specific controlled substance

shipments were diverted, and thus what proceeds generated were the result of illegally sold controlled substances as opposed to legal.

In fact, on cross-examination Dr. Cutler explicitly conceded that he had **no way of knowing whether individual sales were legitimate or illegitimate**. Taking data regarding shipments to Pennsylvania as illustrative of RDC's sales activity for New Jersey, New York and Pennsylvania, which Dr. Cutler analyzed (Tr. at 1359), the testimony clearly established that Dr. Cutler could not link a single sale or shipment of a controlled substance to illicit gains:

> Q: Based on the data you've received for this case, Mr. Cutler, you have no way of knowing whether dispensing made by RDC to pharmacies in Pennsylvania were for prescriptions that were legitimate or illegitimate, correct?
>
> A: **That's correct.**
>
> Q: You can only make the observation that RDC distributed to pharmacies during this time from for X amount of prescriptions, correct?
>
> A: **That's correct**.

*See* Tr. at 1364:6-14. He further testified that when contemplating the results of his case studies on the pharmacies Mr. Doud did business with, he could only identify that a red flag was initiated, he could not say whether Mr. Doud, or RDC conducted an investigation and cleared any suspicion:

> Q: Can we look at the next chart Brighton pharmacy. This is slide 2 of the same 41 examples of case study. So here again the 100 percent for the percent of opioid dosage units flagged as above the limits that were shipped; 100 percent in 2014, 100 percent in 2015. Again, how should the jury understand the 10 percent number?
>
> A: It is exactly what it says which is if an order came in and was flagged because it was above the limit, what ultimately happened to it. And out of everything that was flagged in 2014, all of it was shipped. And out of everything that was flagged in 2015, all of it was shipped. That's what those rows say. Nothing more. Nothing less than that.
>
> Q: So all it's saying is that something was flagged, which you're making by way of this testimony in this proceeding, you're not making any statements or providing an opinion about the underlying investigation in connection with the red flag or what was done after the red flag or whether these prescriptions were legitimate or illegitimate, correct?

2

> A: **That's correct. I'm not testifying at all as to what RDC did once the red flag became apparent.**

*See* Tr. at 1406:14-1407:10. The Government's forfeiture request is predicated on a finding that every sale to a pharmacy where a red flag was identified represents a diverted shipment and thus all proceeds must be divested. There was no evidence introduced at trial to support this argument.

For the Government to now seek $589,032 in forfeiture, claiming that Mr. Doud should be personally divested from every single controlled substance sale where the recipient demonstrated a red flag when its own expert cannot claim that the sale was illegal, makes a mockery of the forfeiture process.

The Government's reliance on *United States v. Roberts*, 660 F.3d 149 (2d Circ. 2011) is also misplaced. In *Roberts*, the Second Circuit specifically noted that the Government had **proven the weight** of cocaine which it claimed the defendant distributed, and the controversy surrounded whether forfeiture could be calculated using the approximate "street value" of that particular weight of cocaine. *Id.* at 165-6. Since the weight was conclusively established, the Second Circuit found no issue with assigning a forfeiture amount based on what the Government reasonably concluded would have been the amount of money the defendant profited from his illegal transactions. *Id.* That is not analogous to the Government's position in this case. For the Government to make an adequate showing which justifies the amount demanded, it was required to introduce evidence at trial showing that that amount of money represented proceeds from diverted drugs beyond a preponderance of the evidence, not by the standard of pure speculation.

*United States v. Capoccia*, 503 F.3d 103 (2d Circ. 2007) is equally unhelpful for the Government's position. Forfeiture is only appropriate when the Government has sufficiently demonstrated the nexus between the property and the offense. *Id.* at 115; *see also* F.R.C.P. 32.2(b)(1). In assessing whether property is subject to forfeiture, the court must determine whether the Government was able to link specific property to the specific crime of conviction. *Capoccia*, 503 F.3d at 116. The instant case presents a similar issue for the Government as *Capoccia* in that "the [g]overnment has not established (not logically could it) that the funds involved … were obtained … as the result of [criminal activity]." *Id.*

Nor is this a situation where Mr. Doud is haggling over whether the Government is seeking "a single farthing more than his criminal acts produced." *Roberts*, 660 F.3d at 166. While the jury convicted Mr. Doud of engaging in a conspiracy to ship controlled substances to pharmacies which exhibited red flags, the Government simply cannot prove that any particular shipments were diverted, even on a preponderance of the evidence standard. The most it offers is conjecture. Any forfeiture without establishing actual illicit gains beyond a preponderance of the evidence is inappropriate.

3

We sincerely thank the Court for its consideration.

                              Respectfully submitted,

                              ROBERT C. GOTTLIEB
                              & ASSOCIATES PLLC

                              By: ___/S/_____
                                    Robert C. Gottlieb, Esq.

                              JANEY LAW FIRM P.C.

                              By: ___/S/_____
                                    Derrelle M. Janey, Esq.

Cc:    Nicolas Roos, Esq.
        Alexandra Rothman, Esq.
        Thomas Burnett, Esq.
        Assistant United States Attorneys (via ECF)

Gottlieb & Janey LLP · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506 · www.gottliebjaney.com